[Civ. No. 40977. Second Dist., Div. Two. Sept. 26, 1973.]

GETTY OIL COMPANY et al., Cross-complainants and Respondents, v. HARTFORD INSURANCE GROUP, Cross-defendant and Appellant.

**COUNSEL**

Lynch & Renga and Fred P. Lynch for Cross-defendant and Appellant.

Griffith & Thornburgh and L. Donald Boden for Cross-complainants and Respondents.

**OPINION**

**FLEMING, J.**—Alfred Kingsley, a truck driver for Seaside Oil Company, slipped and fell while delivering crude oil to the Getty Oil Company's

Gaviota terminal. This declaratory relief action seeks to determine whether The Travelers Insurance Company, which provided premises liability insurance for Getty, or The Hartford Insurance Group, which provided automobile liability insurance for Seaside, covers Getty's liability for Kingsley's injuries. If Hartford's insurance applies its coverage is primary and the case is concluded, because Hartford has already settled Kingsley's claim within liability limits. The trial court found that Hartford's insurance did apply, and Hartford has appealed.

The facts are stipulated: Kingsley had hauled crude oil in Seaside's truck to Getty's Gaviota terminal many times. He always unloaded at the same spot. As a general rule he would pull up to the unloading station, shut off his engine, and hook up the static straps. He would then attach an unloading spout, open the valve, and drain the oil from the truck. After replacing the spout, he would ordinarily mop up any spilled crude oil. The unloading operation took about half an hour. Oil was sometimes spilled, sometimes not. Kingsley tried to mop up after each unloading and would do a thorough mop-up after his last load.

Getty was responsible for taking care of oil spills. It provided a mop and "KD solution" for the truck drivers to use. The KD solution, or solvent, left the cement surface slippery and took more than two and a half hours to dry.

On 3 May 1967 Kingsley made his first delivery to Getty without incident. At the time of unloading he noticed oil in the area where he subsequently fell, but no additional spillage occurred. Kingsley has no recollection of mopping up after his first unloading. Two to two and a half hours later he returned with a second load of crude oil. Other trucks could have unloaded at that spot between his trips, but so far as Kingsley knew none had done so. He noticed a KD slick when he arrived the second time. Kingsley "got out of the tractor cab, hooked up the truck's static straps and opened the valve to let the crude oil run into the sump. He then walked back to the trailer, took the cap off the manifold of the trailer and stepped up on a curb which was raised approximately 12 inches above the cement surface where the truck was parked to get the unloading spout. He picked up the unloading spout and stepped back off the curb when his feet slipped out from under him and he fell on his knees."

Vehicle Code section 16451 provides that an "owner's policy of motor vehicle liability insurance shall insure the person named therein and any other person, as insured, using any owned motor vehicle with the express or implied permission of said assured, against loss from the liability im-

posed by law for damages arising out of ownership, maintenance, or use of such motor vehicle. . . ."

The ultimate issue is whether Getty is an insured under the Hartford automobile liability insurance policy issued to Seaside and therefore entitled to the protection of Hartford's coverage against Kingsley's claim. To qualify Getty as an insured under the Hartford policy, two questions must be answered affirmatively:

1. Did the injury arise out of "ownership, maintenance or use" of the truck?

2. Was Getty "using" the truck?

1. Kingsley's injury clearly arose from use of the truck. ▇ The use of a vehicle includes its loading and unloading and the complete operation of pickup and delivery. (*International Business Machines Corp.* v. *Truck Ins. Exch.*, 2 Cal.3d 1026, 1029 [89 Cal.Rptr. 615, 474 P.2d 431].) ▇ Kingsley was engaged in the process of unloading the truck when he was injured. He slipped in solvent used to clean up oil spilled during the process of unloading. Cleanup, as the facts here show, was an integral part of unloading. (*Mullen* v. *Hartford Accident & Indemnity Co.* (1934) 287 Mass. 262 [191 N.E. 394]; *Maryland Casualty Co.* v. *Cassetty* (6th Cir. 1941) 119 F.2d 602.) That the solvent may have been put down during an earlier unloading does not alter its inherent connection with the unloading process. (*Komorowski* v. *Kozicki* (1969) 45 Wis.2d 95 [172 N.W.2d 329].)

2. More difficult to answer is the question whether Getty was a user of the truck. The extreme cases are clear. In *International Business Machines Corp.* v. *Truck Ins. Exch., supra*, 2 Cal.3d 1026, a truck driver was dollying a desk in an IBM building to the building's loading dock for placement on his truck when he slipped on an IBM employee's eraser and was injured. The Supreme Court held "that the mere maintenance of premises used for loading or unloading is not in itself a sufficient basis upon which to find [IBM] a 'user' of the vehicle; . . ." (2 Cal.3d at p. 1032.) On the other hand, in *Argonaut Ins. Co.* v. *Transport Indem. Co.*, 6 Cal.3d 496 [99 Cal.Rptr. 617, 492 P.2d 673], an employee of the premises owner was using a forklift to unload steel forms from a truck when a load slipped and injured the truck's driver, who was assisting the unloading process. The Supreme Court held that the premises owner was "unquestionably using [the truck] under accepted standards for determining if use was being made, . . ." (6 Cal.3d at p. 507.)

This case falls somewhere between the extremes. Getty's negligence arose from acts which amounted to somewhat more than mere maintenance

of unloading facilities and somewhat less than personal performance of the entire unloading procedure.

In agreement with the trial court's apparent interpretation of the facts, we conclude that Getty's negligence was sufficiently related to the active unloading process to bring it within the definition of "user" under the vehicle liability policy and remove it from the category of static, passive maintenance of a defective and dangerous condition of premises. Because Getty assumed responsibility for the cleanup of oil spilled during unloading and because it provided special unloading equipment whose spillage led to Kingsley's slip and fall, Getty's activity amounted to more than mere failure to maintain a safe place for Seaside's trucks to unload. To the extent that Getty relied on Seaside's truck drivers to clean up, cleanup became a part of the unloading process. In performing this function the drivers were acting on behalf of Getty, and Getty, as a participant in the unloading, became a user of the vehicle.

The accident may also be attributed to the inferior quality of solvent furnished by Getty to clean up the oil spilled. "When the injury results from a defect in the shipper's equipment which is actively used in the loading or unloading operation, California cases have found such usage sufficient to make the shipper or receiver a user under the trucker's policy." (*International Business Machines Corp.* v. *Truck Ins. Exch., supra,* 2 Cal.3d 1026, 1030.)

Whether Getty's negligence is grounded on defective cleanup or on defective solvent, in each respect it became an active participant in the unloading, and therefore a user of Seaside's truck and an insured covered by Hartford's liability insurance policy.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied October 24, 1973, and appellant's petition for a hearing by the Supreme Court was denied November 21, 1973.