[Civ. No. 39190. First Dist., Div. Four. June 10, 1977.]

ARGONAUT INSURANCE COMPANY, Plaintiff and Respondent, v. COLONIAL INSURANCE COMPANY et al., Defendants and Appellants.

**610**

COUNSEL

Daniel C. Miller, Bronson, Bronson & McKinnon, Samuel D. Davis and George K. Hartwick for Defendants and Appellants.

Partridge, O'Connell & Partridge and Wallace O'Connell for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—Colonial Insurance Company (hereinafter Colonial) and Fireman's Fund American Insurance Company (hereinafter Fireman's) have appealed from a judgment declaring their rights and obligations, and those of Argonaut Insurance Company (hereinafter Argonaut) under certain contracts of insurance in connection with a personal injury action brought against Willamette-Western Corporation (hereinafter Willamette).

The case was submitted to the trial court upon the following agreed facts:

"At the time the underlying claim arose, Willamette-Western Corporation was the general contractor for a construction project at the Pittsburg, California Power Plant owned by Pacific Gas and Electric Company. Royal Trucking Company had been retained by the general contractor to haul soil at the construction site. In turn, Royal Trucking Company sub-subcontracted with Kennedy Trucking Company for the latter to supply several dump trucks with drivers. Clifford Graham was one of several such drivers acting within the scope of his employment with Kennedy Trucking Company.

"In Contra Costa County Superior Court Action No. 132-191, Clifford Graham sued Willamette-Western Corporation, alleging that, while he was sitting in the cab of his truck, in the course of its being loaded with earth by employees of Willamette-Western Corporation, using a backhoe loader, which is an off-highway crawler-type piece of loading equipment, not subject to registration under the Vehicle Code of the State of California, a load of earth was dropped into the truck bed from such height that it caused the truck to bounce on its springs. The bounce was allegedly so severe that it caused Mr. Graham to hit his head on the roof of the cab, causing injury to his spine, for which he seeks damages.

"At the time Mr. Graham's claim arose, Willamette-Western Corporation had general liability coverage of $200,000.00 with ARGONAUT INSURANCE COMPANY, and 'non-owned automobile' coverage of $100,000.00 with FIREMAN'S FUND AMERICAN INSURANCE COMPANY. Kennedy Trucking Company had 'owned automobile' coverage of $100,000.00 with COLONIAL INSURANCE COMPANY."

The record also establishes that Argonaut was tendered the defense of the Graham suit, and undertook that defense under a reservation of its rights. Thereafter, Argonaut commenced an action against Colonial and Fireman's, seeking a declaration of the respective rights and obligations of the three insurers whose policies provided concurrent coverage for the accident. The Graham lawsuit subsequently was settled and dismissed without prejudice to and reserving all rights of the respective parties to this appeal. A total of $71,000 was paid to Graham, and it is the allocation of this loss and the cost of the defense of the Graham action which is at issue here.

At the time of the injury in question, there were three liability insurance policies in effect:

*The Argonaut Policy*

The Argonaut policy is a "Comprehensive General Liability" policy in special form required by Pacific Gas & Electric Company to be procured and maintained by contractors engaged in work for it. This policy was issued to Willamette, covering operations by Willamette in the construction for P.G. & E. of an electrical power plant at Pittsburg, California. In policy terms designated "Insuring Agreement I" and "Coverage A- Bodily Injury Liability," Argonaut undertook to pay on behalf of Willamette all sums which the insured shall become obligated to pay by reason of liability imposed by law upon the insured because of bodily injury of any person. "Insuring Agreement III" provided the following definition of "insured" under the policy: "The unqualified word 'insured' includes the insured named in Item 1 of the Declarations, Pacific Gas and Electric Company, and also includes any partner, executive officer, administrative or supervisory employee, director or stockholder thereof while acting within the scope of his duties as such." Exclusion (a) of the Argonaut policy provided that: "This policy does not apply: (a) except with respect to operations performed by independent contractors, to automobiles while away from premises owned, rented or controlled by the insured or the ways immediately adjoining or the loading or unloading thereof." The policy also contained an "excess insurance" clause, stating that "If the insured is insured by any other policy or policies of insurance against loss covered by this policy, this policy shall provide excess insurance over and above the amount collected from such other valid and collectible insurance; . . ."

### The Fireman's Policy

Fireman's issued a "Comprehensive Automobile Liability" policy to Willamette, insuring against the liability for injuries arising from the use of motor vehicles. The policy extended coverage not only to the named insured but also to employees of the named insured with respect to injuries arising out of the loading or unloading of a "hired automobile" with their employer's permission. A "hired automobile" is defined under the policy as an automobile not owned by the named insured which is used under contract in behalf of or loaned to the named insured. The Fireman's policy also contained an "excess insurance" clause, providing that "With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."

### The Colonial Policy

Colonial issued a "Transportation Policy" to Loyd Kennedy, doing business as Kennedy Trucking, covering bodily injury to any person arising out of the ownership, maintenance or use of any automobile covered by the policy. The Kennedy truck which was operated by Graham was an automobile covered by the policy. The Colonial policy also contained an "excess insurance" clause providing that the insurance afforded by the policy shall be excess over any other insurance available to the insured under a policy applicable to the automobile or otherwise.

■ The trial court determined that Colonial's Transportation Policy issued to Kennedy Trucking and covering the Kennedy truck, in which Graham was sitting at the time the loading accident occurred, provided coverage to Cummings (Willamette's employee and the ultimate tortfeasor) because Cummings was a "user" of the vehicle. (See *Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 506 [99 Cal.Rptr. 617, 492 P.2d 673]; *International Business Machines Corp.* v. *Truck Ins. Exch.* (1970) 2 Cal.3d 1026, 1029-1030 [89 Cal.Rptr. 615, 474 P.2d 431]; see *Getty Oil Co.* v. *Hartford Ins. Group* (1973) 34 Cal.App.3d 355, 358-359 [109 Cal.Rptr. 889]; *United States Steel Corp.* v. *Transport Indem. Co.* (1966) 241 Cal.App.2d 461, 464 [50 Cal.Rptr. 576].) Colonial contends that this determination was erroneous, claiming that the California Supreme Court in *International Business Machines Corp.* v. *Truck Ins. Exch.*, *supra*, 2 Cal.3d 1026, totally abrogated the so-called "loading and unloading" doctrine, and established an "equitable" rule charging the

insurer of the culpable party with primary coverage and relieving the insurer of the vehicle.

Cummings is not a named insured under the Colonial policy, and the policy does not contain an omnibus clause (i.e., a clause insuring all persons using the truck with the permission of the named insured). However, under section 11580.1, subdivision (b)(4), of the Insurance Code, an owner's policy of liability insurance is required to insure (with certain exceptions) against the same risks as to which the named insured is protected. (See *National Indemnity Co.* v. *Manley* (1975) 53 Cal.App.3d 126, 132 [125 Cal.Rptr. 513]; *U-Haul Co. of Southern Cal., Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1975) 50 Cal.App.3d 665, 669 [123 Cal.Rptr. 628]; see also *Contreras* v. *America, Compania General De Seguros, S.A.* (1975) 48 Cal.App.3d 270, 280, 281 [121 Cal.Rptr. 694].)

Cummings was a permissive user; he was also an additional insured under the Colonial policy if at the time of the accident Cummings was "using" the Kennedy truck. The "use" of a vehicle includes its loading and unloading; the Kennedy truck was therefore being "used" by those who were involved in the loading process. (*Argonaut Ins. Co.* v. *Transport Indem. Co., supra,* 6 Cal.3d 496, 506; *International Business Machines Corp.* v. *Truck Ins. Exch., supra,* 2 Cal.3d 1026, 1029; see Melnick, Cal. Automobile Insurance Law Guide (Cont.Ed.Bar 1973) §§ 2.11-2.14, pp. 35-38.) Although in recent cases the courts have shown a tendency to interpret restrictively the so-called "loading and unloading" doctrine and have thus been less apt to characterize a given activity as a loading and therefore a "use" of the vehicle, it is unquestionable that here the vehicle was being loaded; the loading and removal of dirt was the reason for the presence of the truck, and it was the very act of loading the dirt into the truck which caused it to "bounce" and Graham to be injured. Cummings was a user, because he was the active participant in loading; the truck of Colonial's insured was brought to the job site by Graham who sat passively in the cab of the truck while Cummings loaded it with dirt. Cummings' activities constituted a "use" of the vehicle within the policy coverage. (*Argonaut Ins. Co.* v. *Transport Indem. Co., supra,* 6 Cal.3d 496, 506; *International Business Machines Corp.* v. *Truck Ins. Exch., supra,* 2 Cal.3d 1026, 1029-1030; *Getty Oil Co.* v. *Hartford Ins. Group, supra,* 34 Cal.App.3d 355, 358.) Cummings was therefore an insured under the Colonial policy.

Both Fireman's and Colonial contend that the trial court erred in its determination that Cummings, the ultimate tortfeasor, was not an

insured under the Argonaut policy and thus, while Colonial and Fireman's were primary insurers with respect to the Graham claim, Argonaut was an excess insurer.

It will be recalled that each of the three policies contained an "excess insurance" clause providing that the policy was excess insurance to other insurance available to the insured. ■ When two or more applicable policies contain "other insurance" clauses, both liability and the costs of defense will ordinarily be prorated according to the amount of coverage afforded. (*Argonaut Ins. Co.* v. *Transport Indem. Co., supra,* 6 Cal.3d 496, 507.) ■ In the present case, however, the trial court determined that, while all three policies covered Willamette, only two of the policies covered Willamette's employee and the ultimate tortfeasor, Cummings, and therefore, under established principles of subrogation (see *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 633-634 [119 Cal.Rptr. 449, 532 P.2d 97]), Colonial and Fireman's were the primary insurers with respect to Graham's claim against Willamette and that Argonaut's policy was excess insurance. (See *Pacific Indem. Co.* v. *Truck Ins. Exch.* (1969) 269 Cal.App.2d 420, 424-427 [74 Cal.Rptr. 793]; *U.S. Fire Ins. Co.* v. *Transport Indem. Co.* (1966) 244 Cal.App.2d 110, 116 [52 Cal.Rptr. 757]; see also *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 428-429 [296 P.2d 801, 57 A.L.R.2d 914].)

■ Fireman's and Colonial attack the trial court's determination that Cummings was not an insured under the Argonaut policy, asserting that Cummings was Argonaut's insured and that therefore Argonaut must also contribute to the settlement. Fireman's points to the definition of "insured" in the Argonaut comprehensive general liability policy, and contends that the term "supervisory employee" in that definition extends Argonaut's coverage to Cummings. The trial court determined that Cummings was not a "supervisor" within the meaning of Argonaut's definition of insured and that to find Cummings a "supervisor" would be a strained interpretation of the policy. Appellant Fireman's relies upon *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423, in which the court interpreted the words "managing employee" in a "definition of insured" provision in the following manner: "We have hereinabove noted the contract provision expressly stating that 'The unqualified word "insured" includes the named insured and also as respects Coverage Clause 1 [the coverage clause here involved] . . . any partner, executive officer, managing employee, director or stockholder thereof while acting within the scope of his duties as such . . .' Obviously the term 'managing employee' is used for generic inclusion. 55 Corpus

616

Juris Secundum, page 2, tells us that 'managing' means 'To have under control and direction; to control and direct; . . . to guide.' Webster's New International Dictionary gives the same meanings. We need not go farther. It is undisputed that Mason at the time of the Leming accident was Oilfields' employe and that he had Oilfields' truck under his control and direction; he was guiding it and he was acting within the scope of his duties. In respect to the several tons of equipment entrusted to him he was Oilfields' sole managing employe. The very identities and relationships and the diversified characters of the several other classes listed in the inclusory clause all lend support to the view that the words 'managing employee' as used therein include an employe entrusted with the duties and responsibilities and performing the functions of Mason under the circumstances shown. The most that could be said in favor of construing the generic term as not including one in the position of Mason is that the term is uncertain in scope and signification. This argument, however, for reasons given in the authorities already cited, must be resolved against the insurer and in favor of coverage. We must therefore conclude, as already indicated, that the Transport policy insured Mason in his operation, direction and control of the Oilfields truck here involved." (46 Cal.2d at pp. 438-439.)

Argonaut contends that, in *Continental Cas. Co.,* the court stated that the employee, Mason, was in *sole* control and therefore "managed" the several tons of truck entrusted to him. In the present case, Graham was injured while he was sitting in the cab of his truck in the course of its being loaded with earth by employees of Willamette. Using a backhoe loader, Cummings dropped a load of earth into the truck bed from such a height as to cause the truck to bounce on its springs. This bounce caused Graham to hit his head on the roof of the cab, sustaining injury to his spine. The record reveals nothing more concerning Cummings or concerning his duties for Willamette. Argonaut contends that, upon the present record, there is no sufficient factual basis for this court to hold that Cummings was a "supervisory employee."

"Absent circumstances indicating a contrary intention, words in an insurance policy are to be used in their plain, ordinary and popular sense." (*Farmers Ins. Exch.* v. *Harmon* (1974) 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117]; see *Burke Concrete Accessories, Inc.* v. *Tolson* (1972) 27 Cal.App.3d 237, 241 [103 Cal.Rptr. 513].) Webster's Third New International Dictionary (1965) provides the following definitions: "*supervise* . . . to coordinate, direct, and inspect continuously and at first hand the *accomplishment* of: oversee with the powers of direction and

decision the implementation of one's own or another's intentions .... *supervisor* . . . one that supervises a person, group, department, organization, or operation: as . . . such a person having authority delegated by an employer to hire, transfer, suspend, recall, promote, assign, or discharge another employee or to recommend such action . . . . *supervisory* . . . of or relating to supervision. . . ."

Webster's New Collegiate Dictionary (7th ed.) provides the following definitions: "*supervise* . . . SUPERINTEND, OVERSEE . . . . *supervisor* . . . an administrative officer in charge of any of various business, government, or school units or operations . . . ." There is no evidence that Cummings had the authority to supervise or oversee a person, group, department, organization or operation in the present case; Cummings was not a "supervisory employee" within the meaning of Argonaut's definition of "insured." (See *Scallion* v. *Borne* (La.App. 1968) 207 So.2d 267, 268-269.)

▇ Fireman's contends that the trial court should have modified the judgment to provide that, under section 11580.9, subdivision (d), of the Insurance Code, Fireman's' policy must be deemed excess to Colonial's policy. The theory is that, although both the Colonial and Fireman's policies insure Cummings, and both afford valid and collectible liability insurance to the same motor vehicle, the Kennedy truck was an "owned" automobile under the Colonial policy. Therefore, says Fireman's, under section 11580.9, subdivision (d), the Colonial policy is, as a matter of law, the primary insurance. Section 11580.9, subdivision (d), of the Insurance Code provides that: "(d) Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

Fireman's is correct in its contention that the Kennedy truck was "described or rated as an owned automobile" under the Colonial "Transportation Policy" and therefore, if section 11580.9, subdivision (d), is applicable, it must be conclusively presumed that the insurance afforded by Colonial is primary and that the insurance afforded by any other applicable policy or policies is excess.

▇ Section 11580.9 was added to the Insurance Code in 1970 (see Stats. 1970, ch. 300, § 7, p. 576). The purpose of the enactment was to

limit the endless controversies which arise where there is more than one policy applicable to a particular loss. (*Pacific Export Packers* v. *Chubb/Pacific Indem. Group* (1976) 57 Cal.App.3d 186, 191 [129 Cal.Rptr. 86].) Section 11580.9 "expresses the total public policy of this state respecting the order in which two or more . . . liability insurance policies covering the same loss shall apply, . . ." (Ins. Code, § 11580.8.) ■■ Section 11580.9, however, applies only to insurance policies issued *or renewed* on or after November 23, 1970 (see Stats. 1970, ch. 300, § 8, p. 577).

In the present case, the Graham accident occurred on October 4, 1971. The Fireman's policy was issued March 1, 1971, for a one-year period and is thus subject to section 11580.9. The Colonial policy, however, was issued on February 26, 1970, effective "until cancelled." Although Colonial's policy was issued prior to the effective date of the statute, Fireman's contends that Colonial's policy is nevertheless subject to section 11580.9, particularly with respect to the Graham accident.

Fireman's argument is as follows: The Legislature adopted section 11580.9 to bring order to the chaotic and frequently litigated subject of which policy is primary and which excess in situations where two or more policies are applicable. Since the conclusive presumptions of section 11580.9 substantially changed the law in this area, the Legislature apparently believed that it would be unfair to subject previously written policies to its conclusive presumptions. However, since policies are generally written for a term of one year, the Legislature contemplated annual policy periods in determining the applicability of section 11580.9. In any event, the statute cannot reasonably be interpreted *never* to apply to a policy which was written before the effective date of the statute but which is effective (conceivably, forever) "until cancelled." A policy issued for an unspecified term, such as the Colonial policy here, would, theoretically, never become subject to remedial legislation, such as section 11580.9. The insurer could collect its premium annually and modify its policy by endorsement without technically ever having issued a new policy or renewed the old. Fireman's contends that that is exactly what Colonial must argue in the present case, and that the Legislature could not have intended such a result.

Fireman's points out that Colonial concedes that the premium period for the Colonial policy was monthly, and that if the monthly premium

payment was not received on or before a specified date the policy was routinely cancelled to be reinstated when the premium was actually received. One such notice of cancellation was sent on October 27, 1972, and a subsequent notice of reinstatement was sent on December 6, 1972. According to these notices, the Colonial policy was "cancelled" and "reinstated" on the same date, November 30, 1972.

Fireman's also argues that "renewal" upon policy anniversary (in this case, monthly) has been equated with "issuance" for application of other remedial legislation, specifically with regard to changes in the uninsured motorist coverage statute. (See *Modglin* v. *State Farm Mut. Automobile Ins. Co.* (1969) 273 Cal.App.2d 693 [78 Cal.Rptr. 355].) In *Modglin*, the insurer was not allowed to avoid application of an amendment to the uninsured motorist coverage statute by arguing that it had not issued a new policy but rather simply renewed the old policy upon the anniversary date. The court in *Modglin* stated that:

"The carrier also urges that when the policy first expired on July 24, 1965, the policy was only 'renewed' and that the renewal does not constitute 'issuance' or 'delivery' of a policy within the meaning of section 11580.2 of the Insurance Code and, thus, it had not 'issued' or 'delivered' a policy of liability insurance to the Modglins' after they came to California. (See *Travelers Indem. Co.* v. *Kowalski, supra,* 233 Cal.App.2d 607, 609; *Eliopulos* v. *North River Ins. Co., supra,* 219 Cal.App.2d 845, 854.) However, the statute applies irrespective of where the policy is issued or delivered, providing that the vehicle is '. . . then principally used or principally garaged in this state. . . .' (See Ins. Code, § 11580.2, subd. (a).)

"Furthermore, if we were to render the construction to the statute which the defendant submits and formulate a rule that the statute only applies to new policies, as distinguished from renewals of existing policies, the purpose of the Uninsured Motorist Law could be circumvented by the mere expedient of insurance of insurance carriers renewing their policies instead of issuing new ones. The Legislature never intended such a result." (273 Cal.App.2d at p. 700.)

Fireman's argues that the premium due date is, in essence, the renewal date of the policy and points out that section 660, subdivision (e), of the

Insurance Code (which deals with the applicability of the Insurance Code with respect to cancellation) requires that a policy written with no fixed expiration date be deemed to have been written for successive one-year terms or periods. That section provides: "(e) 'Renewal' or 'to renew' means to continue coverage for an additional policy period upon expiration of the current policy period of a policy. Any policy with a policy period or term of six months or less, whether or not made continuous for successive terms upon the payment of additional premiums, shall for the purpose of this chapter be considered as if written for a policy period or term of six months. Any policy written for a term longer than one year, or any policy with no fixed expiration date, shall for the purpose of this chapter, be considered as if written for successive policy periods or terms of one year."

The Colonial policy's first anniversary date, February 26, 1971, occurred well after the effective date of Insurance Code section 11580.9, and the accident itself occurred over a year and a half after the effective date of the Colonial policy. In dicta, the California Supreme Court has implied that section 11580.9 may be applied to policies in effect on the date of the accident if the *accident* occurred after the section's effective date. (See *Travelers Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 514, 517, fn. 3 [99 Cal.Rptr. 627, 492 P.2d 683]; *Argonaut Ins. Co.* v. *Transport Indem. Co., supra,* 6 Cal.3d 496, 507-508, fn. 3.) Fireman's contends that such an interpretation is reasonable and obviates the possibility that, for years to come, trial courts will be faced with the possibility of having to revert to the confusion of prior case law on the question of primacy of coverage simply because one policy under consideration was written in such a way that it would never become subject to section 11580.9. '

Fireman's' arguments are persuasive; in light of the monthly premium periods and the notices of cancellation and reinstatement, the Colonial policy was "renewed" after the effective date of section 11580.9 and therefore subject to its provisions. Thus, under section 11580.9, subdivision (d), the Colonial policy must be deemed primary to the coverage afforded by the Fireman's policy.

The judgment is modified to provide that Colonial is the primary insurer with respect to the Graham accident and the insurance afforded by Fireman's and Argonaut is excess thereto; in all other respects the judgment is affirmed. Purported appeals from miscellaneous orders are

dismissed. Argonaut will recover its costs. Fireman's will recover its costs from Colonial.

Rattigan, Acting P. J., and Emerson, J.,* concurred.

The petition of appellant Colonial Insurance Company for a hearing by the Supreme Court was denied August 11, 1977.

---

*Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.