**Stanley HALIFKO and Martha Halifko, Plaintiffs,**

**v.**

**CITIES SERVICE OIL COMPANY, Defendant/Third Party Plaintiff,**

**v.**

**FIREMAN'S FUND INSURANCE COMPANY, Third Party Defendant.**

**Civ. A. No. 80–1025.**

United States District Court, D. New Jersey.

April 9, 1981.

[redacted]

[redacted]

John R. Leith, Mattson, Madden & Polito, Newark, N. J., for defendant/third party plaintiff.

Richard D. Catenacci, Connell, Foley & Geiser, Newark, N. J., for third party defendant.

## OPINION

DEBEVOISE, District Judge.

This motion involves the scope of the "complete operation" doctrine under New Jersey law governing motor vehicle insurance coverage. The precise question is whether the insurer of a motor vehicle is required to defend and indemnify as an additional insured the owner of property on which a named insured is injured while loading a vehicle, when the injury occurred solely as a consequence of an allegedly unsafe condition on the premises. Defendant Cities Service Company and third party defendant Fireman's Fund Insurance Company cross-move for summary judgment on this issue.

The action was originally filed on March 11, 1980 in the Superior Court of New Jersey by plaintiffs Stanley and Martha Halifko, residents of New Jersey, against Cities Service Company, a Delaware corporation with a principal place of business in Oklahoma, to recover for injuries which Mr. Halif-

ko sustained while loading a tank truck at a Cities Service terminal in Linden, New Jersey. On April 11, 1980, defendant removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting federal jurisdiction on the ground of diversity of citizenship between the parties, 28 U.S.C. § 1332. Defendant then filed a third party complaint against Fireman's Fund Insurance Company, the insurer of plaintiff's truck, seeking a declaratory judgment that Cities Service was an additional insured under the truck policy and an injunction compelling Fireman's Fund to defend and indemnify Cities Service in the principal action.

Cities Service and Fireman's Fund are in essential agreement on the facts underlying the complaint. The undisputed facts are as follows: On March 22, 1978, in connection with his employment as a driver for George Schofield Company, plaintiff Stanley Halifko drove a tank truck onto the premises of the Cities Service terminal in Linden, New Jersey for the purpose of obtaining a truckload of heating oil which had been purchased by his employer. Upon arrival, he drove his truck into position number one of the loading facility and positioned the vehicle underneath the overhead lines of the loading rack. After parking his truck on the loading platform, he set his brake, opened the driver's door and stepped out onto the loading platform. Plaintiff alleges that as soon as his second foot hit the ground he slipped upon an oily substance on the platform and fell, sustaining injuries to his back. The source of the slippery substance and the time it was spilled on the platform have not yet been established. It can be fairly inferred from the complaint, however, and both parties agree for purposes of this motion, that the spillage was not attributable to plaintiff's truck.

Plaintiff then brought suit against Cities Service Company contending that it had failed to maintain its premises in a reasonably safe condition for the use of business invitees and that plaintiff, as a proximate result of defendant's negligence, "was caused to slip and fall and thereby sustain severe injuries". Defendant filed a third

party complaint against Fireman's Fund, the insurer of plaintiff's truck, seeking coverage as an additional insured under the truck policy.

The section of the Fireman's Fund policy under which defendant seeks coverage provides as follows:

II. PERSONS INSURED

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is: (1) a lessee or borrower of the automobile, or (2) an employee of the named insured or of such lessee or borrower;

Defendant Cities Service contends that under the terms of this policy and the Compulsory Motor Vehicle Insurance Act, N.J.S.A. 39:6B–1, it was a "user" of plaintiff's truck at the time he was unloading and therefore entitled to coverage as an additional insured under the Fireman's Fund policy. Since the accident occurred in New Jersey, the law of New Jersey is applicable in this diversity action.

Defendant does not contend that it was a lessee or borrower of plaintiff's tank truck or that it was an employee of the named insured at the time the accident occurred so as to come within the express coverage of the insurance policy. Indeed, it could not plausibly make such an argument under New Jersey case law. *See F & M Shaefer Brewing Co. v. Forbes Food Division*, 151 N.J.Super. 353, 361–63, 376 A.2d 1282 (Law Div. 1977). Defendant does argue, however, that the policy provision restricting omnibus coverage to lessees, borrowers and employees, in the event of an accident during loading or unloading of the vehicle, conflicts with the broader statutory provision contained in the Compulsory Motor Vehicle Insurance Act, N.J.S.A. 39:6B–1, and must be disregarded. N.J.S.A. 39:6B–1 re-

quires every owner of a New Jersey motor vehicle to maintain liability insurance coverage against loss sustained by "*any person arising out of the ownership, maintenance, operation or use of a motor vehicle*" in the amount of at least $15,000 per person and $30,000 per accident (emphasis added). At least one New Jersey court has held that this statutory provision overrides more restrictive provisions in an insurance policy. *See Bellafronte v. General Motors Corp.*, 151 N.J.Super. 377, 376 A.2d 1294 (App.Div. 1977). For purposes of deciding this motion, therefore, it will be assumed that the policy exclusions do not apply and that one who is not a lessee, borrower or employee is entitled to coverage under the policy as long as the remaining prerequisites are met.

In order to prevail on the motion, defendant must show that on the facts of this case and under the law of New Jersey it was a "user" of plaintiff's trailer truck during the loading process and that there was a causal connection between its "use" of the truck and plaintiff's injuries. While such a claim might have merit in other jurisdictions, *see Getty Oil Company v. Hartford Insurance Company*, 34 Cal.App.3d 355, 109 Cal.Rptr. 889 (Ct. of Appeal 1973), neither the case law of New Jersey nor considerations of sound policy counsel such a conclusion here.

In support of its claim that it is entitled to coverage under plaintiff's insurance policy, defendant relies primarily upon two cases recently decided by the Superior Court of New Jersey, Appellate Division: *Bellafronte v. General Motors Corp.*, 151 N.J.Super. 377, 376 A.2d 1294 (App.Div. 1977), and *Streeter v. Henry Heide, Inc.*, 171 N.J.Super. 58, 407 A.2d 1265 (App.Div. 1979). Neither of these cases, however, controls the outcome of this case.

In *Bellafronte*, a truck driver who had delivered a shipment of steel beams to General Motors Corporation was injured when the General Motors crane unloading his truck accidentally caused a steel beam to shift and strike his leg. Judge Pressler, writing for the Court, held that under these circumstances the truck driver's insurance company was required by law to provide

coverage to the crane operator as an additional insured. First, she determined, although the insurance policy's omnibus clause purported to exclude all but lessees, borrowers or employees from coverage during loading and unloading operations, N.J.S.A. 39:6–23, *et seq.* (and, on reconsideration, N.J.S.A. 39:6B–1) required it to provide coverage to *any* "user" of the truck. Second, she determined, the word "use" in the statute was intended to cover loading and unloading operations. Third, she determined, "the use of a truck as a cargo carrier necessarily implies, as a matter of common understanding, its use in and as an integral part of the process of loading and unloading that cargo. Thus, one who is in the process of unloading cargo from the vehicle is, for purposes of the omnibus coverage, a user of the vehicle." *Id.* 151 N.J.Super. at 382–83, 376 A.2d 1294. Finally, she concluded, the accident in this case "manifestly arose out of that use since there was clearly 'a substantial nexus between the injury and the use of the vehicle . . . .' ". *Id.* 151 N.J.Super. at 383, 376 A.2d 1294.

In *Streeter,* a truck driver was preparing a loading platform to load a shipment at Henry Heide Incorporated's premises when a spring-loaded docking plate which was supposed to fall into place between the truck and the dock malfunctioned and struck him. Relying upon *Drew Chemical Corp. v. American Fore Loyalty Group,* 90 N.J.Super. 582, 218 A.2d 875 (App.Div.1966), and *Cenno v. W. Va. Paper & Pulp Co.,* 109 N.J.Super. 41, 47, 262 A.2d 223 (App.Div. 1970), the Appellate Division held in a brief opinion that under the applicable "complete operation" doctrine Heide qualified as an additional insured under the truck driver's motor vehicle insurance policy. Citing *Drew,* the Court determined that the proper approach was to consider " 'whether the accident was, within reason, causally connected with the *complete operation of unloading* the . . . truck.' " *Streeter, supra,* 171 N.J.Super. at 60, 407 A.2d 1265 (emphasis in original). Here, it held, "without the lowering of the docking plate to connect the truck with the loading platform, there could be no loading of the truck" and therefore "the placement of the docking plate was an integral part of the loading operation". *Id.* 171 N.J.Super. at 60–61, 407 A.2d 1265. To the insurance company's objection that Henry Heide Incorporated could not be a user because no Heide employee was involved in the accident, the Court replied that "[s]ince the installation of the docking plate was essential to the loading of the truck and the installation was provided for by Heide, Heide was in fact using the truck for loading". *Id.* 171 N.J.Super. at 61, 407 A.2d 1265. In support of this proposition, the Court cited *Cenno v. W. Va. Paper & Pulp Co., supra.*

Assuming, under New Jersey law, that the loading or unloading of a vehicle constitutes a "use" of the vehicle, whether or not loading operations are expressly covered in the policy, and that the "complete operation" doctrine gives a broad scope to the functional operation of loading and unloading, *see Maryland Casualty Co. v. N.J. Manufacturers Ins. Co.,* 48 N.J.Super. 314, 321, 137 A.2d 577 (App.Div.), *aff'd,* 28 N.J. 17, 145 A.2d 15 (1958); *Drew Chemical Corp. v. American Fore Loyalty Group, supra,* the case before the Court is nevertheless distinguishable on its facts from *Bellafronte.* In *Bellafronte,* the allegedly negligent act of the crane operator which caused plaintiff's injuries took place *during* the loading process and was itself a *part* of the loading process. Hence, it could be said that the crane operator's negligent "use" of the truck caused plaintiff's injuries. Here, however, the negligent omission which allegedly caused plaintiff's injuries, *i. e.,* a failure to maintain the premises in a safe condition, took place before plaintiff even arrived at the premises and cannot be considered a "use" of the truck. That *plaintiff* may have been "using" the truck at the time he sustained his injuries, in the sense that he had arguably begun his loading activities at the time he stepped out of the truck, is simply not relevant to the question whether the act of the *defendant* which caused his injuries was a use of the truck.

The *Streeter* case may not so easily be distinguished. There, the Court held that

because the installation of a docking plate "was essential to the loading of the truck and the installation was provided for by Heide, Heide was in fact using the truck for loading". Clearly, the allegedly negligent installation or maintenance of the docking plate were acts that occurred prior to the beginning of the loading process. In support of its conclusion that Heide was entitled to coverage under the truck driver's motor vehicle insurance policy as a "user" despite the fact that its negligent acts were committed before the loading operation began, the *Streeter* Court relied upon the case of *Cenno v. W. Va. Paper & Pulp Co., supra.* The *Cenno* case, however, provides no such support.

In *Cenno*, a truck driver was injured while unloading bales of cardboard boxes when a band securing one of the bales snapped, causing him to fall backward off the truck. The steel company which had manufactured the bands and the box distributor who had baled the boxes sought coverage under the truck driver's motor vehicle insurance policy as additional insureds and the Court denied coverage. "The acts charged to defendants", the Court held, "antedated delivery of the goods . . ., were unrelated to the loading or unloading of the truck, and were not covered by the comprehensive liability policy. The policy does not embrace all accidents happening during the loading or unloading of the truck regardless of causation." *Id.* 109 N.J.Super. at 45, 262 A.2d 223. As a general rule, the Court observed, "the proper approach is to ascertain whether the acts alleged to have caused the accident were, within reason, causally connected with the complete operation of loading or unloading". Although the bales of cardboard boxes certainly could not have been loaded or unloaded *but for* the negligently performed act of banding them into bales, and hence this act could be considered "essential" to the unloading operation, the Court concluded that:

> unless the negligent act which is alleged to have caused the accident was an integral part of the overall loading or unloading operation, so that the mishap is caus-

ally connected with such loading and unloading and did not merely occur during it, the person charged with the negligent act is not considered to have been using the vehicle so as to be covered by the vehicle's liability policy for such act as an additional assured.

*Id.* 109 N.J.Super. at 47, 262 A.2d 223. Since the *Cenno* case clearly held that the act of negligence complained of must have occurred during the loading or unloading process *and* as a part of the loading or unloading process in order to entitle the negligent party to coverage under the truck driver's motor vehicle insurance policy, the *Streeter* Court's reliance upon *Cenno* appears to have been misplaced. The *Streeter* Court offered no other justification for its resolution of the case.

The question whether mere negligent maintenance of the premises can constitute a "use" of a loading or unloading motor vehicle has been given more careful treatment in two cases cited by the third party defendants: *Atlantic Mutual Insurance Co. v. Richards*, 100 N.J.Super. 180, 241 A.2d 468 (Ch.Div.1968), aff'd 105 N.J.Super. 48, 251 A.2d 134 (App.Div.1969), and *F & M Shaefer Brewing Co. v. Forbes Food Division*, 151 N.J.Super. 353, 376 A.2d 1282 (Law Div. 1977). These cases represent a more consistent view of the law and it is my belief that their approach would be followed by the Supreme Court of New Jersey.

In *Atlantic Mutual*, a truck driver was injured while unloading chemicals from his truck when he tripped over a three-foot slat of wood, not used in the loading process, and fell backward into an open stairwell leading from the loading platform. The truck driver brought suit against the owner of the loading platform for negligently failing to maintain his premises in a safe condition, and the platform owner sought coverage under the truck driver's motor vehicle insurance policy. The Court noted that "[t]o construe the maintenance of the loading platform as a 'use of the automobile' in unloading would be to extend automobile liability coverage to negligence occurring prior to the arrival of the truck, that is,

failing to remove dunnage from proximity to the open stairwell, and to a nuisance grounded in negligence, that is, the stairwell without guardrail". The Court observed that no New Jersey case had gone so far and concluded that:

> ... the sounder result favored by most courts is that automobile liability insurance under a loading and unloading clause should not cover damages sustained as a result of negligent maintenance of the premises where the loading or unloading was carried out. The risk insured against should be limited to negligence in loading the automotive vehicle, including preliminary and subsequent measures proximate in time related to its loading or unloading.

*Id.* 100 N.J.Super. at 185, 241 A.2d 468. The owner of the premises was denied coverage under the truck driver's motor vehicle insurance policy. On appeal, the Appellate Division affirmed the result below "substantially for the reasons" given by the trial judge, and held, in addition, that the owner of the premises "was not using the vehicle at the time of the accident in question and, therefore, was not an additional insured under Employers' policy". 105 N.J.Super. at 49, 251 A.2d 134.

*F & M Shaefer* involved a truck driver who was injured when a rope which he had been thrown to maneuver a loading pipe into the top of his truck snapped, causing him to fall from the top of the truck. Reiterating the principle of *Atlantic Mutual*, the Court noted that:

> ... the fact that an accident occurs during the loading or unloading of a vehicle does not in itself mean that coverage will be provided by the automobile insurance. What is required to establish coverage is that the act or omission which resulted in the injury or damage be an act or omission which was necessary to carry out the loading or unloading process ... and not merely an act or omission concerning the maintenance of the loading or unloading premises.

*Id.* 151 N.J.Super. at 358, 376 A.2d 1282.

The Court noted that, if it were forced to decide, it would hold the accident here to have been caused by a negligent act which occurred during and as an essential part of the loading process, namely, the furnishing to the driver of a defective rope, rather than a negligent maintenance of the premises. The Court did not press its distinction from *Atlantic Mutual*, however, because it found that the owner of the premises was not a borrower, lessee or employee and thus was excluded by the terms of the policy from omnibus coverage.

Sound policy considerations weigh strongly against construing an omnibus clause to cover the owner of a loading platform on which a named insured is injured solely due to an unsafe condition on the premises. Such an interpretation would reallocate the ultimate financial risk of the platform owner's negligence to the truck driver's insurance company. This reallocation, in turn, would inevitably result in increased insurance premiums to the motor vehicle operator. As a consequence, the owner of a plant or warehouse at which trucks are unloaded would be freed from a financial incentive to maintain his premises in a safe condition. Truck owners and operators, who exercise little or no control over the premises on which they unload, would be forced to bear the entire financial burden of accidents resulting from platform owners' lack of care.

The major reason advanced in New Jersey cases for giving a broad construction to the omnibus clause is "to effectuate the overriding legislative policy of assuring financial protection for the innocent victims of motor vehicle accidents". *Bellafronte v. General Motors Corp., supra,* 151 N.J.Super. at 382, 376 A.2d 1294; *see also Selected Risks Insurance Co. v. Zulo,* 48 N.J. 362, 225 A.2d 570 (1956). It would seem ironic to require the truck driver's insurance company to defend the owner of a negligently maintained loading platform against a negligence claim brought by its own customer, the innocent victim. Not only would this outcome pose an obvious conflict for the insurance company, it would also reduce, insofar as the insurance company was successful in its defense of the platform owner,

the named insured's chance of recovering for his injuries. The possibility that some negligent platform owners might be both uninsured and judgment-proof is not a sufficient justification for shifting the financial risk of injuries arising from unsafe property conditions from property owners to the motor vehicle insurance buying public.

· These serious policy concerns and the somewhat unclear state of the law in the lower courts of New Jersey point to the conclusion that the New Jersey Supreme Court would not choose to extend omnibus insurance coverage to the owner of a truck loading platform on the facts presented in this case. On the basis of the undisputed facts, therefore, third party defendant Fireman's Fund Insurance Company is entitled to judgment as a matter of law, pursuant to Rule 56 of the *Federal Rules of Civil Procedure.*

For the foregoing reasons, defendant's motion for summary judgment will be denied and third party defendant's cross-motion for summary judgment will be granted. Third party defendant is requested to submit a form of order in accordance with this opinion.