MARATHON OIL CO., Plaintiff,

v.

CONTINENTAL CASUALTY CO., Defendant.

Civ. No. 80–74478.

United States District Court, E. D. Michigan, S. D.

July 29, 1982.

Dale L. Hebert, Detroit, Mich., for plaintiff.

Paul F. Ray and Gregory Zierk, Detroit, Mich., for defendant.

RALPH M. FREEMAN, District Judge.

## MEMORANDUM OPINION

In this civil action, Marathon Oil seeks reimbursement from Continental Casualty for the expenses incurred in settling a negligence action filed against it by Delcor and Valerie Waite. Jurisdiction is based on diversity of citizenship. After conducting a nonjury trial, the Court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

Delcor Waite, an employee of Ray Molder Inc., was injured while loading oil into a Molder tank truck at a southwest Detroit terminal of Marathon Oil. He slipped and fell when he stepped on a gangplank provided by Marathon which spanned the distance between the loading platform and his truck. Waite and his wife Valerie filed a civil action against Marathon to recover damages for those injuries, claiming that Marathon breached its duty to provide a safe place to work. Marathon requested Continental, the insurer of the Molder truck, to assume its defense in the Waite suit, claiming it was an additional insured on the policy covering the Molder truck. Continental refused to assume Marathon's defense. Marathon settled the Waite lawsuit for $14,250.00 and filed the instant action against Continental, seeking reimbursement for the amount of the settlement and for $6,316 in costs and attorney fees incurred in defending the Waite lawsuit.

The facts in this case are not in dispute, the parties having stipulated to the version of the accident related by Delcor Waite in his deposition. Waite arrived at the southwest Detroit refinery of Marathon Oil around 7:00 p. m. on February 22, 1977. Following the normal procedure, he entered the office, where he waited for a loading rack to become available. When one was free, he put a card into a computer in the office "to set up the rack" and moved his truck to the loading rack, parking it 3–4 feet away. He then climbed up a set of stairs to a platform on the loading rack, which was 12–14 feet above the ground and 3–4 feet lower than his trailer. After placing a ticket in a meter located on the loading platform, Waite then activated the pump by pulling down a crank on the meter. He next placed a metal gang plank against his truck, permitting him to walk from the loading platform up to the top of the truck trailer. The gang plank was three feet wide, three to five feet long, and consisted of three or four folding steps. Once standing on top of the trailer, Waite grasped a loading spout, and, placing it in one of the two openings on the top of the trailer, released a handle to permit the oil to flow into the trailer. After one compartment was filled, he shut the spout off, moved it to the second compartment, filled it, and again turned the spout off. As Waite moved to push the spout out of his way, he stepped on the gang plank, slipped, and fell to the ground between the loading rack and the trailer. No Marathon employees participated in or were present during the loading procedure.

The first issue to be resolved in determining whether Marathon was covered by Molder's automobile liability insurance policy for the injury to Waite is whether Marathon was a person insured under Section II of the Continental policy. This is a different question from whether the insurance policy excludes coverage of additional

insured for bodily injury to employees of the named insured arising in the course of employment and covered by worker's compensation, which was the issue addressed by Judge Cohn of this Court in *Marathon Oil Co. v. Michigan Mutual Insurance Co.*, No. 80–74445 (E.D.Mich. Dec. 28, 1981). Marathon claims that the limitation of additional insureds in the Continental policy on the Molder truck with respect to injury arising out of the loading or unloading of the vehicle to lessees or borrowers of the vehicle or employees of such lessees or borrowers or of the named insured is an invalid attempt to restrict the scope of the coverage of the policy to less than that required by Michigan's Motor Vehicle Financial Responsibility Act and Michigan's No-Fault Insurance Act. This issue and the applicable caselaw was discussed in a memorandum opinion of this Court dated July 21, 1981 issued in connection with the cross-motions for summary judgment previously filed in this case. For the reasons discussed therein, and relying specifically on the cases of *Mission Insurance Co. v. Aid Insurance Services*, 120 Ariz. 220, 585 P.2d 240 (1980), and *Bellafronte v. General Motors Corp.*, 151 N.J.Super. 377, 376 A.2d 1294 (1977), which construed contract terms and motor vehicle financial responsibility statutes virtually identical to those at issue here, the Court concludes that the language in the Continental policy restricting coverage of loading and unloading accidents to the categories of borrowers, lessees, or employees of the named insured, borrowers, or lessees violates M.C.L.A. § 257.520(b)(2) and is void and unenforceable in Michigan.

▉ Therefore, the question now becomes whether Marathon was using the Molder truck at the time Waite was injured, and therefore was insured under Section II(c) of the Continental insurance policy. Defendant does not dispute that "use" of a motor vehicle includes loading and unloading. The focus of the inquiry is not whether Waite was engaged in loading the truck at the time he was injured, but whether Marathon was involved in loading the truck so as to be covered as a user of the truck. The applicable caselaw, which

was summarized in this Court's July 21, 1981 opinion, reveals that determining whether a party providing loading facilities is also a user of the truck for the purposes of insurance coverage under a policy issued on a vehicle using those facilities is indeed a close question. Plaintiff relies on a line of cases involving either participation of the employees of the owner of the loading facilities in the loading of the motor vehicle, *see e.g.*, *Mission Insurance Co. v. Aid Insurance Services, supra; Sinclair Oil Corp. v. New Hampshire Insurance Co.*, 107 R.I. 469, 268 A.2d 281 (1970) or some defect in the equipment furnished by the owner of the loading facility which is actively used in the loading operation, *see, e.g., Travelers Insurance Co. v. Employers Liability Assurance Corp.*, 367 F.2d 205 (4th Cir. 1966) (Maryland law), (defective wire on lever controlling oil flow on filling spout); *Chenango Gas Co., Inc. v. Allstate Insurance Co.*, 39 Misc.2d 177, 240 N.Y.S.2d 194 (Sup.Ct.1963) (defective switch used in unloading process). Defendant relies on cases that attempt to distinguish between the mere failure to maintain a safe place to load and negligence in loading a motor vehicle. *See, e.g., American Oil Co. v. Hardware Mutual Casualty Co.*, 408 F.2d 1365 (1st Cir. 1969) (R.I. law); *Continental National Insurance Co. v. Carriers Insurance Co.*, 55 Wis.2d 533, 200 N.W.2d 584 (1972); *Amery Motor Co. v. Corey*, 46 Wis.2d 291, 174 N.W.2d 540 (1970); *IBM v. Truck Insurance Exchange*, 474 P.2d 431, 89 Cal.Rptr. 615, 2 Cal.3d 1026 (1970). Indeed, even in the case that most strongly supports plaintiff's position, *Getty Oil Co. v. Hartford Insurance Group*, 109 Cal.Rptr. 889, 34 Cal.App.3d 355, 359 (1973) the court noted that "Getty's activity amounted to more than mere failure to maintain a safe place for Seaside's trucks to unload." *Id.*, 109 Cal.Rptr. at 891.

▉ The importance of making the distinction between premises liability and negligence in loading a vehicle is explained in the *Amery* and *IBM* cases, and was reiterated most recently by the court in *Halifko v. Cities Service Oil Co.*, 510 F.Supp. 1131 (D.N.J.1981) (New Jersey Law) as follows:

Sound policy considerations weigh strongly against construing an omnibus clause to cover the owner of a loading platform on which a named insured is injured solely due to an unsafe condition on the premises. Such an interpretation would reallocate the ultimate financial risk of the platform owner's negligence to the truck driver's insurance company. This reallocation, in turn, would inevitably result in increased insurance premiums to the motor vehicle operator. As a consequence, the owner of a plant or warehouse at which trucks are unloaded would be freed from a financial incentive to maintain his premises in a safe condition. Truck owners and operators, who exercise little or no control over the premises on which they unload, would be forced to bear the entire financial burden of accidents resulting from platform owners' lack of care.

*Id.* at 1136. The proper inquiry is whether the injuries were caused by the active use of the premises owner's defective equipment or by the static, passive maintenance of a dangerous condition on the premises. *Compare IBM v. Truck Insurance Exchange*, 89 Cal.Rptr. at 618 *with Getty Oil Co. v. Hartford Insurance Group*, 109 Cal. Rptr. at 891. In two cases, *American Oil Co. v. Hardware Mutual Casualty, supra* and *Halifko v. Cities Service Oil Co., supra*, courts faced with facts virtually identical to those before this Court, utilized a causation analysis to determine whether a premises owner was a user of a truck being loaded at its premises. In these cases, drivers of oil tank trucks slipped and fell on the oily surface of loading platforms. The First Circuit, in *American Oil*, affirmed the trial court's conclusion that the truck driver's injuries were caused by "an independent factor wholly disassociated from the loading activities," i.e., the premises owner's negligence in allowing oil and oily rags to remain on the loading platform. *American Oil Co. v. Hardware Mutual Casualty Co., supra* at 1369. The district court in *Halifko,* applying New Jersey law, noted that the negligent omission which caused the truck driver's injuries, i.e., the failure to

maintain the premises in a safe condition, took place before plaintiff even arrived at the premises and therefore could not be considered a use of the truck in the sense of being part of the loading process. *Halifko v. Cities Service Oil Co., supra* at 1134.

The only difference between the facts in *American Oil* and *Halifko* and the case before this Court is that Waite slipped and fell from a gang plank extending between the loading platform and the truck trailer rather than from the loading platform itself. The Court is not convinced that this distinction makes any difference. The gang plank from which Waite fell was merely an extension of the loading platform. Unlike the spout through which the oil flowed into the truck or the lever which activated the pump, it was not an essential part of the loading process itself. The fact that an accident occurred during the loading of a vehicle does not in itself mean that coverage will be provided by an insurance policy on that vehicle unless the person seeking coverage was actively involved in some way in the loading procedure. An act or omission concerning the maintenance of a loading premises is not such involvement in the use of a motor vehicle as to avail a party of coverage under the insurance policy on that vehicle. The alleged negligence of Marathon consisted of its failure to keep the gang plank free of grease and oil, clearly a matter of its negligent maintenance of the loading premises, rather than its active involvement in the loading procedure.

The Court concludes, for the reasons stated herein, that Marathon Oil is not an insured under the Continental Insurance policy on the Molder truck that Waite was loading with oil on February 22, 1977. Judgment will be granted in favor of defendant Continental Casualty. An appropriate form of judgment will be submitted.