[Civ. No. 9061.    Fourth Dist., Div. Two.    June 4, 1969.]

LILLIAN B. MODGLIN et al., Plaintiffs and Appellants, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Respondent.

694

Ruston & Nance and Donald A. Ruston for Plaintiffs and Appellants.

Banyard & Portigal and Allan Portigal for Defendant and Respondent.

KERRIGAN, J.—Plaintiffs are the widow, son and daughters of Gilbert Modglin, who sustained fatal injuries on October 24, 1965, when a Ford Falcon he was driving was involved in an accident with an uninsured motorist in the State of California. Defendant, State Farm Mutual Automobile Insurance Company, a corporation, is an insurer licensed to do business in the State of California and in the State of Arizona.

The facts are virtually undisputed. On May 26, 1965, State Farm issued bodily injury motor vehicle liability policies insuring the aforesaid Ford Falcon and a Buick owned by Gilbert Modglin and Lillian Modglin, his wife. The policies were issued and delivered in the State of Arizona with the coverage period being from May 26, 1965 to July 24, 1965. The policies contained no uninsured motorist coverage, and the laws of Arizona required none. At the time the policies were issued, the Modglins resided in a home which they owned in Phoenix.

In early June 1965, Gilbert drove the Falcon to California for the purpose of seeking employment. During the trip, the car was damaged in a sandstorm.

In late June 1965, Lillian joined her husband in California but left the Buick, furniture and household goods in Arizona. Although they apparently retained title to the Phoenix home, from the time of the wife's arrival to the date of the husband's death, both resided in California. They resided at different locales in southern California: Compton, Pomona, Buena Park and the Anaheim area. During the period from

the husband's arrival in California until the date of his demise, the Falcon was garaged only in the State of California and was never used in any other state.

On July 11, 1965, the Modglins reported the Falcon sandstorm damage to the state Farm agent in Pomona. They visited the State Farm office on July 12 and filled out a claim form. Mrs. Modglin presented the agent with an identification card issued by State Farm, which indicated that the Modglins' home address was in the State of Arizona. The agent noted that the policy was coming up for renewal on July 24, 1965, and inquired whether the Modglins wished to have coverage transferred to California. Mrs. Modglin replied, ''I did not come in for that purpose. . . .'' She explained that they were then living at the Pomona Inn and, although they had moved to the southern California area, Mr. Modglin was anticipating being transferred by his employer to another location in southern California and, therefore, they did not have a permanent California address. The agent advised the Modglins that as soon as they became situated they should go to the nearest State Farm office and complete a territorial transfer application, but if they didn't move within the next ten days to two weeks, to return to the office and he could complete the transfer for them. There was no discussion about uninsured motorist protection. The agent never saw the Modglins again. He wrote on the claim form, ''Visiting here from . . . Phoenix, Arizona. . . .'' The claim was forwarded to the claims office and it was paid.

Following the Modglins' arrival in California, a renewal billing notice was mailed from State Farm's regional office in Greeley, Colorado to the Modglins at their Arizona address. The Modglins had filed a change of address card with the Phoenix postoffice, and their mail was forwarded to a Pomona address. When the premium notice and a check for the insurance premiums were returned to the defendant's Greeley office by mail, no change of address was requested. The envelope containing the statement and check was postmarked July 30, 1965, Buena Park, California, and bore the return address of the Modglins' residence in Phoenix.

In August 1965, Mrs. Modglin returned to Phoenix, packed the furniture, and drove the Buick to California. By then the parties had moved from Pomona to the Buena Park-Anaheim area to be near Mr. Modglin's place of employment.

Subsequently, Mr. Modglin was involved in the accident

with the uninsured motorist on October 24. On November 2, Mrs. Modglin visited the office of a local State Farm agent and filed a form requesting that the policies be transferred from Arizona to California.

Following the accident and the denial of uninsured motorist coverage by State Farm, plaintiffs filed an action for declaratory relief and asked for a determination that the Falcon and Buick auto policies issued by State Farm contained uninsured motorist coverage under the provisions of the California Uninsured Motorist Law (Ins. Code, § 11580.2). The trial court made the following fundamental findings: State Farm issued two auto insurance policies covering the Buick and Falcon; the policies provided coverage for a period from May 26, 1965-July 24, 1965; the policies were issued in Arizona; the assured moved to California in June 1945 without notifying the insurer of their change of residence before the accident; the home address of the Modglins was shown on defendant's records as Phoenix, Arizona; the renewal date of the policy was July 24, 1965; on the renewal date the Falcon was principally used or garaged in the State of California.[1]

The court concluded that the defendant was not required to include uninsured motorist coverage in the original and renewal policies issued to Gilbert Modglin and Lillian Modglin, and that the policies did not afford uninsured motorist coverage to the insured or his heirs on October 24, 1965. Judgment in favor of the defendant was entered in accordance with the foregoing findings and conclusions.

The sole issue is whether State Farm incurred liability for coverage for the wrongful death of the insured by the uninsured motorist.

Section 11580.2 of the Insurance Code provides: ''(a) No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be issued or delivered in this state to the owner or operator of a motor vehicle, *or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state,* unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section

---

[1]The findings do not reflect the period covered by the renewal, but both sides apparently concede that the Falcon policy was in force and effect on the date of the accident (October 24, 1965).

16059 of the Vehicle Code, insuring the insured, his heirs or his legal representative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. The insurer and any named insured may by agreement in writing delete the provision covering damage caused by an uninsured motor vehicle. . . .'' [Italics added.]

The minimum limits of coverage allowed as of the date of the accident in this case was in the sum of $10,000 for bodily injury or death of one person and $20,000 for bodily injury or death of two or more persons. (Veh. Code, § 16059.) [2]

■ A liberal construction must be given to statutes providing compensation for those injured on the highway through no fault of their own (*Interinsurance Exchange of Auto. Club* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142, 153-154 [23 Cal.Rptr. 592, 373 P.2d 640]; *Hanover Ins. Co.* v. *Carroll*, 241 Cal.App.2d 558, 563 [50 Cal.Rptr. 704]), and the Uninsured Motorist Law is a statute of this class and is to be interpreted liberally. (*Katz* v. *American Motorist Ins. Co.*, 244 Cal.App. 2d 886, 890-891 [53 Cal.Rptr. 669]; *Mills* v. *Farmers Ins. Exchange*, 231 Cal.App.2d 124, 128 [41 Cal.Rptr. 650].)

■ Section 11580.2 of the Insurance Code is one facet of the entire financial responsibility law (*Inter-Insurance Exchange of Auto. Club* v. *Lopez*, 238 Cal.App.2d 441, 446 [47 Cal.Rptr. 834]), and is "designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others." (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914].) ■ An insurance policy is governed by the relevant statutory law in force at the time the policy is issued; such provisions are read into the policy and become a part of the contract (*Interinsurance Exchange of Auto. Club* v. *Ohio Cas. Ins. Co., supra,* 58 Cal. 2d 142, 148; *Wildman* v. *Government Emp. Ins. Co.*, 48 Cal.2d 31, 39-40 [307 P.2d 359]); this rule is applicable to section 11580.2 of the Insurance Code. (*Hendricks* v. *Meritplan Ins. Co.*, 205 Cal.App.2d 133, 136-137 [22 Cal.Rptr. 682].)

■ Consequently, as a matter of public policy, every bodily injury motor vehicle liability policy issued or delivered in this

---

[2] Amended by Stats. 1967, ch. 862, p. 2304, § 3, effective July 1, 1968, whereby the minimum coverage was increased to $15,000/$30,000.

state should provide uninsured motorist coverage (*Travelers Indem. Co. v. Kowalski,* 233 Cal.App.2d 607, 609 [43 Cal. Rptr. 843]; *Hendricks* v. *Meritplan Ins. Co., supra,* p. 136), and the provisions of the statute are part of every policy of insurance to which it is applicable, to the same effect as if it was written out in full in the policy itself. (*Page* v. *Insurance Co. of North America,* 256 Cal.App.2d 374, 376 [64 Cal.Rptr. 89]; *Eliopulos* v. *North River Ins. Co.,* 219 Cal.App.2d 845, 855 [33 Cal.Rptr. 449]; *Hendricks* v. *Meritplan Ins. Co., supra.*) The fact that no additional premium is assessed for uninsured motorist coverage is immaterial; the insured is entitled to the protection that the statute affords. (*Eliopulos* v. *North River Ins. Co., supra,* p. 850.)

■ Insurance companies have the right to limit uninsured motorist coverage, and when they have done so, the plain language of the limitations must be respected. (*Darrah* v. *California State Auto. Assn.,* 259 Cal.App.2d 243, 246 [66 Cal.Rptr. 374].) However, uninsured motorist coverage may only be omitted from the policy upon written agreement of the insured and insurer. (*Lopez* v. *State Farm Fire & Cas. Co.,* 250 Cal.App.2d 210, 212 [58 Cal.Rptr. 243]; *Utah Home Fire Ins. Co.* v. *McCarty,* 266 Cal.App.2d 892, 894 [72 Cal. Rptr. 460].)

■ Where a policy is issued and delivered in California, it protects the insured with uninsured motorist protection even when driving in states or neighboring countries not having the California requirements. (*Mission Ins. Co.* v. *Brown,* 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275]; *Hanover Ins. Co.* v. *Carroll, supra,* 241 Cal.App.2d 558, 563.)

Defendant contends that the statute does not apply to an auto insurance policy issued and delivered in Arizona where the insured moved to California and failed to give formal notice of his change of residence to the carrier.

■ While an insurance company cannot take upon itself the prerogative of changing the assured's address on a policy without the express authorization of the insured merely because it receives information that the assured is residing at an address other than the address which appears on the policy (*Doran* v. *State Farm etc. Ins. Co.,* 219 Cal.App.2d 256, 271 [33 Cal.Rptr. 225]), defendant's argument is not compelling. The statute expressly provides that uninsured motorist protection is to be included in a policy in either of two instances: (1) Where the policy is issued or delivered in California to

the owner or operator of a motor vehicle; or, in the alternative, (2) where a policy is ". . . issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state. . . ." (Ins. Code, § 11580.2, subd. (a).)

■ The evidence was conclusive that the Falcon had been garaged and used exclusively in California from June 1965 until the date of the accident, and the trial court properly found that the Falcon was used and garaged principally within the state at the time the policy was renewed. While the trial court determined that no formal notice of a change of address had been effected, there was uncontradicted evidence that defendant's Pomona agent had actual knowledge that the car was garaged and used in California, and that the assured's husband intended to take up permanent residence in this state. In view of the trial court's finding that the Falcon was only used and garaged in California at the time the licensed insurer renewed the policy, the insured was entitled to uninsured motorist protection under the clear wording of the statute.

■ The carrier also urges that when the policy first expired on July 24, 1965, the policy was only "renewed" and that the renewal does not constitute "issuance" or "delivery" of a policy within the meaning of section 11580.2 of the Insurance Code and, thus, it had not "issued" or "delivered" a policy of liability insurance to the Modglins after they came to California. (See *Travelers Indem. Co.* v. *Kowalski, supra,* 233 Cal.App.2d 607, 609; *Eliopulos* v. *North River Ins. Co., supra,* 219 Cal.App.2d 845, 854.) However, the statute applies irrespective of where the policy is issued or delivered, providing that the vehicle is ". . . then principally used or principally garaged in this state. . . ." (See Ins. Code, § 11580.2, subd. (a).)

■ Furthermore, if we were to render the construction to the statute which the defendant submits and formulate a rule that the statute only applies to new policies, as distinguished from renewals of existing policies, the purpose of the Uninsured Motorist Law could be circumvented by the mere expedient of insurance of insurance carriers renewing their policies instead of issuing new ones. The Legislature never intended such a result.

The judgment is reversed and the trial court is directed to enter findings of fact, conclusions of law and judgment in

favor of plaintiffs determining that the liability policy issued by the defendant to Gilbert and Lillian Modglin on July 24, 1965, applied to a Falcon automobile then principally used and principally garaged in California, and contained uninsured motorist coverage by operation of law.

McCabe, P. J., and Tamura, J., concurred.