DOLLY M. GEE, UNITED STATES DISTRICT JUDGE
This matter is before the Court on Plaintiff Jennifer Bentley's motion for summary judgment and Defendant United of Omaha Life Insurance Company's ("United") cross-motion for summary judgment [Doc. ## 147, 148]. Having duly considered the written submissions filed in support of and in opposition to the motions, the Court now renders its decision. For the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.
The central issue presented in these motions is whether United breached its agreement with policyholders when it terminated life insurance policies included in Plaintiff's Class definition because prior to terminating these policies, it failed to provide the requisite notices under Cal. Ins. Code §§ 10113.71 and 10113.72 (the "Statutes"). The Statutes' effective date is January 1, 2013 ("Effective Date").
I.
PROCEDURAL HISTORY
On October 7, 2015, United removed this case to federal court from Los Angeles *726 County Superior Court. [Doc. # 1.] During the two and a half years that this case has been pending before this Court, United has filed various motions, all of which the Court denied to varying degrees. See Order Re Defendant's Motion to Dismiss FAC ("June 22, 2016 Order") [Doc. # 27]; Order Re Defendant's Motion for Certification of Court's Order ("Sept. 14, 2016 Order") [Doc. # 46]; Order Re Defendant's Motion to Dismiss TAC ("Aug. 8, 2017 Order") [Doc. # 107]; Order Re Defendant's Motion to Deny Class Certification ("January 4, 2018 Order") [Doc. # 119].
The Court granted class certification on May 1, 2018 ("May 1, 2018 Order"). [Doc. # 132.] The Court then revised the Class definition two subsequent times. Order Re Plaintiff's Motion to Compel ("July 13, 2018 Order") [Doc. # 153]; Order re Plaintiff's Motion for Clarification ("Aug. 8, 2018 Order) [Doc. # 158]. The operative Class definition reads as follows:
All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies renewed, issued or delivered by United of Omaha Life Insurance Company ("Omaha") in the State of California that lapsed or were terminated by Omaha for the non-payment of premium after January 1, 2013 (and which were not affirmatively cancelled by the policyholder), and as to which policies the policyholder(s) did not receive one or more of the notices of the right to designate under Section 10113.72 of the California Insurance Code.
Aug. 8, 2018 Order at 1. [Doc. # 158.]
On June 15, 2018, Bentley and United filed cross-motions for summary judgment ("MSJ"). [Doc. ## 147, 148.] The Motions have been fully briefed, including supplemental briefing filed after the October 26, 2018 hearing on the Motions. [Doc. ## 151, 152, 161, 162, 169, 170.]
II.
REQUEST FOR JUDICIAL NOTICE
United requests that the Court take Judicial Notice of the following documents:
• Exhibit 8: The internet-based System for Electronic Rate and Form Filing, referred to in the insurance regulatory industry by its acronym, "SERFF," which is found on the website of the California Department of Insurance ("DOI").
• Exhibit 9: Documents produced by the DOI pursuant to United's Public Records Act request for documents relating to the prospective application of Insurance Code statutes enacted pursuant to California Assembly Bill 1747 of 2012.
• Exhibit 10: Letters between the DOI and counsel for Plaintiff regarding the denial of her claim by United, as produced by Plaintiff in this action, setting forth the position of the DOI that the Statutes do not apply to her claim since the life insurance policy United issued to Eric Bentley was issued prior to the effective date of the Statutes.
• Exhibit 11: The First Amended Complaint in Moriarty v. American General , pending in the United States District Court for the Southern District of California, Case No. 3:17-CV-01709-BTM-WVG, filed October 19, 2017.
• Exhibit 12: The First Amended Complaint in McHugh v. Protective Life Insurance Company , San Diego Superior Court, Case No. 37-2014-00019212-CU-IC-CTL, filed on or about January 9, 2015.
*727 • Exhibit 13: The Complaint in Rosen v. Pacific Life Insurance Company , Orange County Superior Court, Case No. 30-2015-00774924, filed March 4, 2015.
• Exhibit 14: The Complaint in Mojgan Gholamnejad v. Pruco Life Insurance Company , United States District Court for the Northern District of California, Case No. 5:16-cv-06151-BLF, filed October 25, 2016.
• Exhibit 15: The Joint Case Management Conference Statement in Mojgan Gholamnejad v. Pruco Life Insurance Company , United States District Court for the Northern District of California, Case No. 5:16-cv-06151-BLF, filed February 15, 2017.
• Exhibit 16: The Second Amended Complaint in Fernando Matos v. Jackson National Life Insurance Company , United States District Court for the Central District of California, Case No. 2:17-cv-04010-AB-SS, filed July 5, 2017.
See United Request for Judicial Notice [Doc. # 148-9]; United App'x of Exhibits [Doc. # 148-4], Exs. 1-8 [Doc. # 148-5], and Exs. 9-16 [Doc. # 148-6].
Federal Rule of Evidence 201 enables a court to take judicial notice of adjudicative facts. A fact may be judicially noticed if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). "Facts are indisputable, and thus subject to judicial notice, only if they are either 'generally known' under Rule 201(b)(1) or 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned' under Rule 201(b)(2)." United States v. Ritchie , 342 F.3d 903, 909 (9th Cir. 2003). "Under Rule 201, [a] court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." U.S. ex rel. Modglin v. DJO Glob. Inc. , 48 F.Supp.3d 1362, 1381 (C.D. Cal. 2014) (collecting cases).
A court may also take judicial notice of court filings and other matters of public record. Harris v. Cnty. of Orange , 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"); see also Reyn's Pasta Bella, LLC v. Visa USA, Inc. , 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings). A court can also appropriately take judicial notice of copies of "records and reports of administrative bodies." Ritchie , 342 F.3d at 908.
The Court DENIES United's requests for judicial notice for the reasons set forth below.
The Court DENIES United's request as to Ex. 8 because it is moot. The Court previously granted United's judicial notice request as to Ex. 8.[1] Sept. 14, 2016 Order at 2.
The Court DENIES United's request as to Ex. 9. United previously offered Ex. 9 in its MTD and the Court denied its request because the Court saw "no reason to deem private one-on-one communications between individual DOI employees and members of the public as 'matters of public record.' " Aug. 8, 2017 Order at 2; see also Fed. R. Evid. 803(8). Additionally, absent the public records exception to the hearsay rule, the Court sustains Bentley's objection that Ex. 9 is hearsay. The Court disagrees with United's *728 argument that it only cites the document to show that the DOI opinion of the Statutes exists and not for the truth of the matter. See United's Reply at 4. [Doc. 162-1.] To the contrary, United refers to the DOI's application of the Statutes in its MSJ to support its argument that the Statutes should only apply to policies issued or delivered after the Effective Date.
The Court DENIES United's request as to Ex. 10. The Court SUSTAINS Bentley's hearsay objection on the same grounds as it did for Ex. 9.
Ex.11 through Ex. 16 are court filings and therefore matters of public record that are not reasonably disputed. See Ritchie , 342 F.3d at 909. Nonetheless, the Court SUSTAINS Bentley's relevance objection because Exs. 11-16 are complaints, which merely describe the plaintiffs' causes of action, not the courts' reasoning and interpretation of the Statutes and therefore are not relevant here.
III.
FACTUAL BACKGROUND[2]
A. The Bentley Policy
Eric Bentley ("Eric") purchased a term life insurance policy from United, which issued February 28, 2001, with a $ 1,000,000 face amount ("Bentley Policy"). Joint Stipulation of Facts and Evidence ¶ 7. ("Jt. Stip.") [Doc. # 149.] Eric was both the policyholder and the insured under the Bentley Policy. Id. ¶ 7.
Eric paid the Bentley Policy's premium annually for 13 years from 2001 through 2013. Eric made a premium payment of $ 670.80 on or about May 1, 2014. Id. ¶ 8. On May 23, 2014, United emailed Eric confirming that United used his most recent payment "to advance your coverage to August 28, 2014." Id. ¶ 9. United sent Eric a premium notice, dated July 28, 2014, advising him that his next premium payment was due on August 28, 2014. Id. ¶ 10. No premium payment was made for the Bentley Policy by August 28, 2014. Id.
United sent Eric another premium notice, dated September 9, 2014. Id. ¶ 11. No premium payment was made for the Bentley Policy after the premium payment of $ 670.80 made on or around May 1, 2014. Id. United then sent Eric a letter dated October 28, 2014 that stated: "We have not received your premium payment due August 28, 2014. [¶] Since your payment has not been received, your coverage has terminated ...." Id. ¶ 12.
Eric died on November 7, 2014. Id. ¶ 13. As of the date of the October 28, 2014 letter discussed above, Jennifer Bentley, as Trustee of the 2001 Bentley Family Trust, was the beneficiary of the Bentley Policy. Id.
Jennifer Bentley made a claim to United for the death benefits under the Bentley Policy. Id. ¶ 14. United denied the claim for benefits because the Bentley Policy had, according to United, terminated before Eric's death. Id.
B. The Class
United issued each of the 32 policies ("Class Policies") within the Class Definition. Jt. Stip. ¶ 15. All but one of the life *729 insurance policies listed on the May 2018 Policy and Beneficiary Chart[3] ("Class List") was issued or delivered in California. Id. ¶ 16, Stipulated Ex. 1 [Doc. # 149-5]. The policy that was not issued or delivered in California, Policy No. UR2828580, was issued on July 8, 2013, and lapsed according to United's records on November 5, 2013 (prior to reaching its anniversary date), when the policy owner had an address of record in California. Id. ¶ 17.
Each of the 31 insurance policies listed on the Class List that were issued or delivered in California were in force after the Statutes' Effective Date. Id. Of the 31 policies listed on the Class List that were issued or delivered in California, United's records show that ten policies[4] , Nos. UA7820542 (line 13), UR2663468 (line 14), UR2648669 (line 15), UR2627721 (line 16), UR2648784 (line 17), UR2674494 (line 18), UR2671752 (line 19), UR2584816 (line 23), UR2681720 (line 24), and UR2654966 (line 26), lapsed or terminated for non-payment of premium prior to reaching their anniversary date in 2013. Id. ¶ 18. Besides these policies, all other policies that were issued or delivered in California and listed on the Class List reached an anniversary date in 2013 prior to their lapsing. Id. ¶ 20.
United stipulates that, aside from the seven policies in the Class List discussed below, all the other policies on the Class List lapsed for non-payment of premium. Id. ¶ 35. United contends that the following four policies on the Class List, Nos. 8448979 (line 2), 7997098 (line 3), 5554559 (line 8)[5] , and UA7820542 (line 13), lapsed due to inadequate cash value. Id. at 33. United also contends that the following three term policies on the Class List reached the end of their guaranteed level premium period prior to lapsing: BU1105227 (line 9), BU1133356 (line 10), and BU1152776 (line 31). Id. ¶ 34.
The listed beneficiaries on the Class List were the beneficiaries of each of the policies at the time the policies lapsed. Id. ¶ 21. United did not provide the policy owners of the life insurance policies listed on the Class List an opportunity to designate a person in addition to the policy owner (i.e., a "Designee") to receive notice of lapse or termination of a policy for nonpayment of premium ("Offer to Designate" Notice). Id. ¶ 22. United did not send any Designee any notice in connection with any of the policies listed on the Class List ("Designee Notice"). Id. ¶ 23. United has not paid death benefits on any of the policies on the Class List. Id. ¶ 32.
IV.
LEGAL STANDARD
Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; accord *730 Wash. Mut. Inc. v. United States , 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. Nat'l Ass'n of Optometrists & Opticians v. Harris , 682 F.3d 1144, 1147 (9th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby , 477 U.S. at 248, 106 S.Ct. 2505.
The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324, 106 S.Ct. 2548 (quoting Fed. R. Civ. P. 56(c), (e) ); see also Norse v. City of Santa Cruz , 629 F.3d 966, 973 (9th Cir. 2010) (en banc ) (" Rule 56 requires the parties to set out facts they will be able to prove at trial.").
"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." Soremekun v. Thrifty Payless, Inc. , 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." Id.
When faced with cross-motions for summary judgment, the Court considers each motion on its own merits to determine whether the Rule 56 summary judgment standard is satisfied. Fair Housing Council of Riverside Cty., Inc. v. Riverside Two , 249 F.3d 1132, 1136 (9th Cir. 2001). Where the issues before the Court are questions of law, the case is particularly "well suited" for summary judgment. Del Real, LLC v. Harris , 966 F.Supp.2d 1047, 1051 (E.D. Cal. 2013) ; see also Asuncion v. Dist. Dir. of U.S. Immigration & Naturalization Serv. , 427 F.2d 523, 524 (9th Cir. 1970) (district court properly resolved motion for summary judgment where issues presented were comprised solely of questions of law).
V.
DISCUSSION
Bentley argues that, according to basic statutory interpretation, the renewal principle, and public policy, the Statutes apply to the Class policies. Thus, Bentley maintains that United was required to give the notices provided in the Statutes because the policies lapsed after the Statutes' Effective Date. Id. at 2.
United asserts that, as a matter of law, the Statutes do not apply to the life insurance policies within the Class. United MSJ at 1. United contends that the Statutes apply only to those policies that were issued or delivered in California after the Statutes' Effective Date. Id. at 1.
A. The Statutes
The Statutes went into effect on January 1, 2013. Section 10113.71(b)(1) provides in relevant part:
A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.
Cal. Ins. Code § 10113.71(b)(1).
Section 10113.71(b)(3), in pertinent part reads, "[n]otice shall be given to the policy *731 owner and to the designee by first-class United States mail within 30 days after a premium is due and unpaid." Id. at § 10113.71(b)(3).
Section 10113.72 provides:
(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.
(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.
(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.
Cal. Ins. Code § 10113.72.
The Court refers to § 10113.72(a) as the "Offer to Designate" requirement, § 10113.72(b) as the "Annual Notice" requirement, and § 10113.72(c) as the "Designee/30-Day Notice" requirement. The Statutes require insurance providers to give policyholders and their designee(s) adequate notice prior to terminating their life insurance policy. May 1, 2018 Order at 3 [Doc. # 132].
1. The Plain Language of the Statutes
United argues that the Statutes apply only to policies issued or delivered on or after the Effective Date. According to United, the use of the word "shall" in the first sentence of both §§ 10113.71 and 10113.72 indicate that the Legislature intended the Statutes to apply prospectively. United also contends that the use of "applicant" in § 10113.72(a) and the reference to subsection (a) in subsection (c) read in light of subsection (b) indicate that the right to change designees would be unnecessary unless an applicant has already made a designation upon being issued a policy.
United asserts that "it would be impossible for an insurer to comply with a policy that it issued prior to the date of that statute's enactment" and application of the Statutes to pre-Effective Date policies is an unconstitutional impairment of contracts because the Statutes impose new obligations to which it did not consent. United MSJ at 10, n.7. United cites a litany of statutes within the California Insurance Code for the proposition that if the Legislature intended to include renewals, it would have included the term in the Statutes.[6]
As Bentley points out, however, the Court did not rule that the Statutes apply *732 retroactively. Instead, the Statutes apply prospectively to policies that continued in force after the Effective Date.
The Court has already addressed United's plain language argument several times and will not repeat its full analysis here.[7] See June 22, 2016 Order at 6-7 [Doc. # 27], Sept. 14, 2016 at 4 [Doc. # 46], and Aug. 8, 2017 Order at 5-6 [Doc. # 107]. Suffice it to say that the Court stands by its prior ruling that the "Statutes [are] applicable to the Insured's Policy based on statutory construction principles." June 22, 2016 Order at 7.
First, "the Statutes do not apply retroactively to the Policy-rather, Section 10113.72(b) of the Insurance Code applies prospectively from the effective date of the Statutes and when a policy renews, it incorporates any changes in law that occurred prior to the renewal." Sept. 14 Order at 4 (citing June 22, 2016 Order at 8-9 (citing Stephan v. Unum Life Ins. Co of Am. , 697 F.3d 917, 927 (9th Cir. 2012) ) ). [Doc. # 46.] United's reliance on Interinsurance Exch. of Auto. Club v. Ohio Casualty Ins. Co. , 58 Cal. 2d 142, 23 Cal.Rptr. 592, 373 P.2d 640 (1962), to assert that the "black letter maxim" "that insurance policies are governed by the statutory and decisional law in force at the time the policy is issued" does not contravene the Court's interpretation of the Statutes. See United MSJ at 10-11. The ruling in Interinsurance was based on the premise that statutes should not have a retroactive effect on existing life insurance policies. Interinsurance , 58 Cal.2d at 148-149, 23 Cal.Rptr. 592, 373 P.2d 640. Furthermore, under binding Ninth Circuit precedent, "[t]he law in effect at the time of a renewal of a policy governs the policy even if that law is subsequently changed or repealed." Stephan , 697 F.3d at 927 (citing Interinsurance , 58 Cal. 2d at 148-149, 23 Cal.Rptr. 592, 373 P.2d 640 ). Here, the Court does not impose the Statutes' notification requirements on conduct that occurred prior to the Effective Date. The Court's application of the Statutes to the Class Policies is entirely prospective.
Second, the Court again rejects United's assertion that the Legislature intended to exclude renewed policies from the Statutes' coverage because it intentionally omitted the term "renewal" in the Statutes. Out of the 14 statutes United cites, eleven do not pertain to life insurance or apply to an insurer's notification requirements to the insured to prevent lapse or termination of coverage. The three statutes that do apply to life insurance do not relate to procedural notification requirements. Here, § 10113.71 imposes upon United the unambiguous mandate that a notice of pending lapse and termination of a life insurance policy "shall not be effective" unless it has been mailed by the insurer to the named policy owner and, as relevant here, a designee named pursuant to Section 10113.72 at least 30 days prior to the effective date of termination. Cal. Ins. Code § 10113.71(b)(1). There is a concomitant requirement that the insurer notify a "policy owner" annually of his or her right to designate one or more persons to receive notice of lapse or termination of a policy for nonpayment of premium. Id. at *733 10113.72(b). Nothing in these cited provisions predicate the notice upon whether the "policy owner" is an existing, new, or renewing policy holder.
Third, United's reliance on Briseno to support its argument that the Statutes do not apply to renewed policies is of no avail. Briseno v. ConAgra Foods, Inc. , 844 F.3d 1121, 1125 (9th Cir. 2017). Briseno merely recites a well-known canon of statutory construction-"expression unius est exclusion alterius " (i.e., the enumeration of certain criteria to the exclusion of others should be interpreted as an intentional omission). The Court stands by its Aug. 8, 2017 Order in which it determined that the traditional canons of construction the Briseno court applied do not undermine the statutory interpretation principles the Court used to construe the meaning of the Statutes. See Aug. 8, 2017 Order at 6. [Doc. # 107.]
Fourth, the Court has already ruled against United's argument that application of the Statutes to the Class Policies is an unconstitutional impairment of contract. See United Mot. for Cert. of Court's Order at 12. [Doc. # 30.] As previously stated, the Statutes only include a protective notification measure; so long as United provides the requisite notice, United can exit from the policy agreement. See Sept. 14, 2016 Order at 4. [Doc. # 46.]
United has not brought forth any arguments that persuade the Court to change course on its prior statutory interpretation and ruling that the Statutes apply prospectively from the Effective Date to the Class Policies. The Court already determined, "[t]o adopt United's interpretation would mean that the Statutes never apply to an existing policy issued before the effective date of the Statutes, no matter how far into the future that policy is extended. This leads to an absurd result, which the Legislature could not have intended." June 22, 2016 Order at 7 (emphasis original).[8]
a. Renewal Principle
United contends that there is no case law applying the "renewal principle" to a statute that does not include the word "renewal" therein. United MSJ at 16. Bentley counters that both Stephan and Cerrone establish a renewal principle in California. Bentley Opp'n at 18.
In California, an insurance policy incorporates all statutory and decisional law in force at the time of that policy's issuance--this law binds the parties to the policy. Interinsurance , 58 Cal. 2d at 148-149, 23 Cal.Rptr. 592, 373 P.2d 640. Likewise, when an insurance policy is renewed, any changes in the law that occurred prior to the renewal are incorporated into the policy. Stephan , 697 F.3d at 927 (citing Modglin v. State Farm Mut. Auto. Ins. Co. , 273 Cal. App. 2d 693, 700, 78 Cal.Rptr. 355 (1969) ). Courts have applied this renewal principle to incorporate new California law into insurance policies that were in force prior to the effective date of the new law and renewed after the effective date. Cf. Modglin , 273 Cal. App. 2d at 700, 78 Cal.Rptr. 355 (observing that to create a rule that an uninsured motorist statute could only apply to new auto insurance policies, but not renewals of existing policies, would allow insurers to circumvent the purpose of the uninsured motorist statute by only renewing policies instead of *734 issuing new ones) and Cerone v. Reliance Standard Life Ins. Co. , 9 F.Supp.3d 1145, 1151-1152 (S.D. Cal. 2014) (citing the renewal principle in Stephan to hold that Cal. Ins. Code § 10110.06, a statute that voids discretionary clauses in certain circumstances, applied to and voided the discretionary provision within a life insurance policy because the policy renewed and continued in force after the effective date of the statute). The Court incorporates its prior analysis applying the renewal principle to this case and will not repeat it here. See June 22, 2016 Order at 7-8 and May 1, 2018 Order at 6-7. The renewal principle applies to the Class Policies.
b. The California DOI and the Insurance Industry
United also argues that according to both the California DOI and the insurance industry, the Statutes apply only to policies issued or delivered on or after the Effective Date. See United MSJ at 3-6. United accompanies this argument with a request for judicial notice of numerous exhibits, which the Court has denied. See United App'x of Exs. and discussion at Part II, supra .
United offers the DOI's periodic market conduct examination of United that includes guidelines applying the Statutes' notice requirement only to policies issued after January 1, 2013 to further support its argument. Id. at 4; United App'x of Exs., Ex. 17.
United asserts another insurer, Transamerica Premier Life Insurance Company, also has construed the Statutes not to apply to policies issued or delivered prior to the Effective Date.[9] United MSJ at 4-5.
The Court does not find United's arguments persuasive.
An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts; however ... the binding power of an agency's interpretation of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the absence of factors that support the merit of the interpretation.
Yamaha Corp. of Am. v. State Bd. of Equalization , 19 Cal. 4th 1, 7, 78 Cal.Rptr.2d 1, 960 P.2d 1031 (1998) (emphasis in original). Here, the documents United offers do not provide the reasoning behind their interpretation that the Statutes apply only to policies delivered or issued on or after the Effective Date. In the absence of any meaningful analysis, the Court rejects their interpretation of the Statutes.
2. Whether the Statutes Apply to Policies Issued or Delivered Outside of California
United contends that the Statutes do not apply to policies that were issued or delivered outside of California even if the renewal principle were applicable here. Id. United maintains that applying California law to out-of-state policies creates confusion because there could be a conflict between California and the other state's notice requirements. Id. at 21. Additionally, United argues if the Statutes were to apply to out-of-state issued policies because of the renewal principle, then those policies would have to renew after the Effective Date. Id.
Bentley counters that the renewal principle is applicable to policies first issued or delivered outside of California and later *735 renewed in the state. Bentley Opp'n at 20-21. Further, Bentley argues that United could simply comply with both state laws, or the law of the state where the policyholder resides. Id. at 22, n. 9.
The parties' dispute regarding whether the Statutes can apply to out-of-state policies centers on the inclusion of one policy[10] on the Class List. See Jt. Stip. ¶¶ 16-17 and Suppl. Memo Opp'n Bentley MSJ at 4. [Doc. # 170.] United issued this policy in Florida on July 8, 2013 and it lapsed on November 5, 2013 for nonpayment. Kallenbach Dec. ¶ 3 [Doc. # 170-1]. United sent a premium notice to the policyholder at his Florida address in July 2013 and United received payment on August 2, 2013. Id. ¶ 4. United later received a request for change of address, effective September 23, 2013, from the Florida address to an address in San Diego, California. Id. It follows that the policyholder likely paid the premium payment while still in Florida. Id. From the evidence, it appears that United was not aware of the policyholder's move from Florida to California until after the final premium payment was made. Even under Bentley's argument, the premium payment had to have been made in California for the policy to renew in California. Here, there is no indication that the premium renewal occurred in California. Therefore, the Court removes this policy from the Class List.
3. A Premium Payment Constitutes a "Renewal" and a Policy Must "Renew" After the Effective Date for the Statutes to Apply
United asserts that even if the renewal principle were to apply here, policies that lapsed in 2013 prior to their renewal (or annual anniversary date) cannot be subject to the Statutes. United MSJ at 22. More specifically, United argues a mere premium payment does not constitute renewal. Suppl. Memo Opp'n Bentley MSJ at 4. According to United, four of the policies on the Class List terminated in 2013 prior to reaching their anniversary date in 2013, and therefore, according to the renewal policy, should not be included in the Class.[11] Id. United maintains that it was required to send policyholders an annual Offer to Designate Notice at any specific time. Id. at 23. Therefore, United could have sent the Offer to Designate Notice to at any time between the Effective Date and December 31, 2013 and not violated the Statutes. Id.
Bentley responds that owners of policies in force after the Effective Date should have been given, at a minimum, the Annual Notice and Designee Notice prior to lapse. Bentley Opp'n at 22-23. Bentley also maintains that, even if a policy did not renew after the Effective Date, the Statutes apply because they authorize a private right of action. Suppl. Memo ISO Bentley MSJ at 5-7. [Doc. # 169.] Finally, Bentley asserts that policies that do not include "renewal" language still renew annually because Cal. Ins. Code § 10110.6 provides that insurance policies automatically renew annually on their anniversary date. Id. at 24.
A Class Policy renewed when a premium payment was made after the Effective Date, regardless of whether the payment was an annual or a subannual premium payment. In Argonaut , the court held that a monthly premium payment of a transportation liability insurance policy, which was considered an annual term policy, constituted a renewal. Argonaut Ins., Co. v. Colonial Ins. Co. , 70 Cal. App. 3d 608, 619-20, 138 Cal.Rptr. 855 (1977). The *736 court determined the statute in question was incorporated into the policy once the policy renewed through a monthly premium payment that occurred after the statute's effective date. Id. at 620, 138 Cal.Rptr. 855.
Here, the facts are similar to those in Argonaut. A Class Policy owner can pay for his or her annual life insurance policy in other intervals besides annually, such as in monthly payments. See e.g. Jt. Stip., Ex. 3 at 22 ("Payment of Premiums"). [Doc. # 149-2.] By the terms of the Class Policies, if a policyholder fails to make a timely premium payment, the policy terminates. Id. at 23 ("Nonpayment of Premiums"). The policy can be reinstated if the policyholder fulfills certain conditions, including paying all past due premiums. Id. ("Reinstatement"). Additionally, all the policies on the Class List terminated after the Effective Date because of failure to make a required premium payment. Jt. Suppl. Ex., Ex. A (Column E). [Doc. # 167-1.] Whereas neither the Class Policies nor the Statutes define renewal, Black's Law Dictionary defines "renewal" as "[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." Black's Law Dictionary (10th Ed. 2014). This definition is consistent with the holding in Argonaut because the court did not consider the policy renewal a mere extension of the previous policy, but a new contract. See Argonaut , 70 Cal. App. 3d at 620, 138 Cal.Rptr. 855.
United's argument that the Court tacitly rejected the Argonaut renewal definition when it dismissed Bentley's individual breach of contract claim is incorrect. Bentley's individual breach of contract claim (the third cause of action) alleged United breached its policy with Eric because United did not provide coverage for the entire year even though Eric made one of two required semi-annual payments during that policy year. TAC ¶ 71. [Doc. # 87.] By contrast, that a "renewal" can mean a subannual policy payment that renews a policy for the period of time that the payment covers is entirely consistent with the Court's previous ruling that one semi-annual payment does not result in the policy renewing for the entire policy year.
Under the renewal principle, a renewal must occur subsequent to the Effective Date for the Statutes to be incorporated into the policies on the Class List. Bentley's reliance on Cal. Ins. Code § 10110.6 for her assertion that a policy renews if it continues in force on or after its anniversary date is misplaced. Section 10110.6 provides that discretionary clauses in life and disability insurance policies are void. See Cal. Ins. Code § 10110.6. Subsection (b) states, "for the purposes of this section , 'renewed' means continued in force on or after the policy's anniversary date." § 10110.6(b) (emphasis added). Bentley does not cite to any legal authority that applies § 10110.6's renewal definition outside the context of discretionary clauses. Nor does § 10110.6 contain language indicating that its renewal definition was meant to be applied to other aspects of insurance policies besides the voidability of discretionary clauses. Indeed, the phrase "for the purposes of this section" in § 10110.6(b) indicates otherwise. Furthermore, case law supports the application of the renewal principle to incorporate a new statute into different types of insurance policies that renew subsequent to the effective date of the new statute (e.g., auto insurance in Modglin , transportation liability insurance in Argonaut , disability insurance in Stephan , and life insurance in Cerone ).
For the Statutes to apply to a Class Policy, it must renew after the Effective *737 Date. Bentley's arguments that the Statutes apply to the Class Policies either because (1) those policies were in force subsequent to the Effective Date or (2) the Statutes apparently authorize a private cause of action are of no avail. See Bentley MSJ at 11 and Suppl. Memo ISO Bentley MSJ at 5. If either argument were valid, it would obviate the need for the renewal principle entirely.[12] Plaintiff cannot rely on the renewal principle when it suits her and then jettison it when it does not.
Finally, United's argument that it had until December 31, 2013 to send out an Offer to Designate Notice is unavailing. United was aware of the Statutes prior to the Effective Date and was expected to be in compliance by the time the Statutes became effective, especially given California's renewal principle and the fact that a premium payment constitutes a renewal. See United App'x, Ex. 19 at 51-52 (indicating the California insurance governmental agencies communicated to insurers that insurers needed to be compliant with the Statutes by their Effective Date).
In consideration of the requirement under the renewal principle that a policy must renew for the Statutes to apply and that renewal can be a premium payment, the Court revises the Class List. First, six policies[13] United contends should be removed from the Class List because they did not reach their anniversary date in 2013 will remain because a premium payment was made in 2013 after the Effective Date. See Jt. Suppl. Ex., Ex. A (Column D). The Court removes four policies[14] from the Class List because no premium payments were made in 2013 and therefore the Statutes were never incorporated into those policies through the renewal principle prior to lapsing. Id.
4. The Statutes Govern Policies that Terminated After Reaching the End of Their Guaranteed Level Premium Period
United contends the Statutes do not apply to policies that terminated after reaching the end of their guaranteed level premium. See United MSJ at 23; United App'x of Exs., Exs. 5-7; Jt. Stip. ¶ 34.
United argues that the "most reasonable inference" as to why those policies lapsed after reaching the end of the guaranteed level premium period is that those policyholders no longer wanted to pay a premium that was several times the amount they had been paying. United MSJ at 23-24. United maintains that based on this inference, those policies did not lapse for nonpayment of premium and therefore the Statutes should not apply to those policies. Id. at 24.
*738 Bentley asserts that these policies should be in the Class because the reason for nonpayment of a premium is irrelevant--what matters is that there was a lapse due to nonpayment. Bentley Opp'n at 25.
The Court upholds its previous ruling that the Statutes apply to policies that lapsed after reaching the end of their guaranteed premium period. May 1, 2018 Order at 11-12. "The Statutes require insurers to provide policyholders notice whenever their premium is due and unpaid. It does not distinguish the circumstances in which the premium remains constant or increases."Id. (internal citation omitted).
5. The Statutes Govern Policies that Terminated for Inadequate Cash Value
United argues the Statutes to not apply to policies that terminated for inadequate cash value because there was no missed premium payment. See Bjork Decl., Ex. B [Doc. # 147-2]; United App'x of Exs., Exs 1-4; Jt. Stip. ¶ 33 United MSJ at 24. Some policyholders borrowed against their policy's cash value and were required to pay interest on that loan. Id. If the policy contained insufficient cash value and the policyholder failed to pay the interest charge, the policy lapsed. Id.
Bentley argues these policies should be included in the Class because there is no functional difference between policies that lapsed due to inadequate cash value and nonpayment of premium. Bentley Opp'n at 24.
The Court maintains is previous ruling that policies that lapsed due to inadequate cash value lapsed because the policyholder did not make a premium payment. May 1, 2018 Order at 11. Indeed, the letters sent to the policyholders whose policies were terminated because of inadequate cash value all include language stating that the policy would be terminated if premiums and/or interest were not paid by a particular date.
6. Other Disputed Policies
The Parties dispute whether policies that lapsed after receiving an Annual Notice in 2016, but did not receive Annual Notices in 2013, 2014, or 2015 should be in the Class.[15] Bentley MSJ at 15-16; see also Jt. Stip. Bentley Mot. to Show Cause at 1. [Doc. # 142.] Bentley contends policies that received an Annual Notice only in 2016 should be in the Class because failure to send the Annual Notice prior to 2016 constituted breach of the policy. Id. The Court ruled against Bentley and held that "a beneficiary [was] not a class member simply because his or her policyholder did not receive an Annual Notice in 2013, 2014, or 2015. Rather, Defendant's failure to provide one or more of the third-party notices ... signifies that the beneficiaries on those policies fall within the class definition." July 13, 2018 Order at 4.
Notwithstanding that ruling, Bentley sent Class notices to the beneficiaries of *739 three of these policies[16] despite those policies not being on the Class List and in contravention of this Court's July 13 Order. See United Mot. to Show Cause at 5 [Doc. # 165]. Because United sent these policyholders the Annual Notice prior to the policies lapsing, they do not fall within the Class definition.[17] See Jt. Stip. Facts, Exs. 9 and 11. The Court maintains its prior ruling that these policies do not belong in the Class.[18] See July 13, 2018 Order at 4.
7. Revised Class List
Even with the revisions to the Class List noted above, there remain 26 Class Policies, which encompass 33 Class Members. This number is still sufficient to satisfy the Fed. R. of Civ. P 23(a)(1) numerosity requirement. See Slaven v. BP Am., Inc. , 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("[t]he Ninth Circuit has not offered a precise numerical standard; other District courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25-30 members."). The Court's Class List revisions therefore do not jeopardize the class certification.
B. Breach of Contract
Based on the renewal policy discussed above, any changes in the law that occurred prior to the renewal are incorporated into the policy at the time of renewal. Stephan , 697 F.3d at 927. Thus, the Statutes were incorporated into Eric's policy, which is a valid contract of insurance.
"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."[19] Oasis W. Realty, LLC v. Goldman , 51 Cal. 4th 811, 821, 124 Cal.Rptr.3d 256, 250 P.3d 1115 (2011) (citing Reichert v. General Ins. Co. , 68 Cal. 2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968) ). Jennifer Bentley, as the class representative, has successfully demonstrated that United breached its contractual duty to pay life insurance benefits because[20] : (1) United issued the life insurance policy to Eric Bentley, and Jennifer Bentley is that policy's beneficiary, Jt. Stip. ¶ 15; (2) the Bentley policy was issued, delivered, or renewed in California by United, id. ¶¶ 16-17; (3) the Bentley policy renewed after the Effective Date, id. ¶¶ 17, 20; (4) United did not provide Eric Bentley with the Offer to Designate or provide Jennifer Bentley with the Designee/30-Day Notice required by the Statutes, id. ¶¶ 22-24; (5) the Bentley policy *740 lapsed for non-payment of premium after the Effective Date, id. ¶¶ 4-5, 35-36; and (6) to date, United has not paid death benefits on the Bentley policy. Id. ¶ 32.
Thus, there is no dispute of material fact that United breached its contractual duty to pay Jennifer Bentley's life insurance claim.
1. Damages
The Parties disagree regarding damages calculations. Bentley asserts that according to Cal. Ins. Code § 10111, she and Class Members are entitled to the face value of the policies, without any set-offs due to apparent loan balances and unpaid premiums. Bentley MSJ at 22 and Bentley Reply at 13. She also contends that she and Class Members are entitled to prejudgment interest. Id. Bentley asserts that Cal. Ins. Code § 10172.5 sets an interest rate minimum, and § 10172.5 does not prevent applying the higher ten percent interest rate. Bentley Reply at 14. To that end, Bentley maintains that the prejudgment interest applied should be ten percent per annum after breach pursuant to Cal. Civ. Code § 3289(b), because the Class Policies do not specify a legal rate of interest. Bentley MSJ at 22.
United counters that Class Members are entitled to the death benefits calculated according to each policy's terms, which may be less than the face value of the policy. United Opp'n at 21. United maintains that for some of the Class Policies, the benefits will be less than the face value because some policyholders borrowed on the policy or had unpaid premiums at the time of lapse. Id. According to United, the net death benefit for a particular policy would be the face value minus any loans plus interest due and/or premiums due. Id. United also asserts that some policies lapsed within the first two years of issuance, which means the death benefit is 110% of the premiums paid unless the policyholder died due to an accident. Id. Finally, United argues that the policies do in fact state an interest rate (either one or three percent, depending on the policy) and, therefore, pursuant to Cal. Ins. Code § 10172.5(a), the prejudgment interest is either one or three percent, whichever is listed in the particular policy. Id. at 22.
The death benefits for each policy are as defined in each policy's terms. See Jt. Stip., Exs. 3 and 15. Damages for contractual breach, where the only obligation was to pay money, are limited to "the amount due by the terms of the obligation, with interest thereon." Cal. Civ. Code § 3302. Further, § 10111 states that, "[i]n life or disability insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto." Cal. Ins. Code § 10111. According to § 10111, the policy's value is the amount owed to the policyholder (or beneficiary) when an insurance policy is breached. Therefore, Bentley and Class Members are entitled to the death benefits, but for the reasons United asserts, the death benefit for some policies will be less than face value.[21] Any disputes as to the precise amount of the death benefits for each beneficiary will have to be the subject of a separate motion.
*741 Bentley and Class Members are also entitled to prejudgment interest. Section 3289(a) provides that the legal rate of interest chargeable after a breach of contract is "any legal rate of interest stipulated by contract." Cal. Civ. Code § 3289(a). The interest rate is ten percent interest per annum only when the contract does not stipulate a legal interest. Id. at § 3989(b). Further, § 10172.5(a) provides in relevant part:
Notwithstanding any other provision of law, each insurer admitted to transact life insurance ... in this state that fails or refuses to pay the proceeds of, or payments under, any policy of life insurance issued by it within 30 days after the date of death of the insured shall pay interest, at a rate not less than the then current rate of interest on death proceeds left on deposit with the insurer computed from the date of the insured's death, on any moneys payable and unpaid after the expiration of the 30-day period.
Cal. Ins. Code § 10172.5(a).
Contrary to Bentley's assertion, the Class Policies specify a legal rate of interest. Therefore, the ten percent interest rate does not apply here. See e.g. Jt. Stip., Ex. 3 at 25 ("General Conditions"). Specifically, depending on the type of policy, United pays the policyholder or beneficiary the policy proceeds at either a one or three percent interest rate.[22] Burton v. Prudential Ins. Co. of Am. , 669 Fed. App'x 829, 829 (2016) (affirming the district court's interpretation that § 10172(a) required "insurers to pay at least the same interest rate that they paid to their depositors during the period in which the life insurance benefits were benefits were past due."); see, e.g. , Jt. Stip., Ex. 15; see also Jt. Stip., Ex. 1 (Column X) and Jt. Suppl. Ex., Ex. A (Column Z).
The Court disagrees with Bentley that § 10172.5(b) provides for application of a higher interest rate in the circumstance that payment is withheld beyond what is "reasonably necessary." See Bentley Reply at 14-15. Section 10172.5 is not a tort-based statute and Bentley does not assert a tort claim. Furthermore, Bentley does not contest that the deposit interest rate is either one or three percent, depending on the policy. See Bentley Reply 14-15. Therefore, prejudgment interest shall be applied to the death benefits for each Class Policy, consistent with the guaranteed interest rate explicitly specified in each particular policy.[23]
VI.
CONCLUSION
In light of the foregoing, the Court GRANTS summary judgment in favor of Plaintiff Jennifer Bentley on her breach of contract claim and DENIES United's cross-motion for summary judgment.
The Court also GRANTS United's Motion for Order to Show Cause to the extent that Bentley must send curative notices to the four beneficiaries[24] who inappropriately received a Class notice despite not being on the Class List. Bentley must allow *742 United to review the notices in advance of mailing and shall provide United with a copy of the notices sent. The parties shall file a joint status report within ten days indicating how they wish to proceed.
IT IS SO ORDERED .

Additionally, the Court maintains its previous determination that the SERFF documents do not support United's argument that the Statutes do not apply here because the SERFF documents did not interpret or comment on the Statutes. Id. at 4.

The Court sets forth the material undisputed facts and views all reasonable inferences to be drawn from them in the light most favorable to the non-moving party. Unless otherwise indicated, the facts are undisputed or were not controverted by admissible evidence. Although Bentley asserted evidentiary objections [Doc. ## 152 and 152-2], the Court declines to rule on them because they pertain to evidence that: (1) the Court need not consider to decide the MSJ, or (2) does not affect the outcome of the instant motion, regardless of whether it is admissible.

United compiled the May 2018 Class List according to the Class definition in the Court's Class Cert. Order. Jt. Stip. ¶ 4. Before the May 2018 Class List, United generated a November 2017 Class List. Id. ¶ 5; Stipulated Ex. 2. United created the November 2017 Policy and Beneficiary Chart in response to Bentley's discovery requests. Id. Regarding the two versions of the Policy and Beneficiary Chart, both sides dispute whether certain policies should or should not be on either list. See Jt. Stip. The Court will focus on the May 2018 Class List because it was compiled in accordance with the Class definition.

The Jt. Stip. did not include policy no. UA7820542 (line 13). The Court assumes that there are ten policies because, with the exception of the Jt. Stip., the parties consistently refer to ten policies in this group.

The Beneficiary for this policy has since opted out of the Class. Jt. Suppl. Ex. at 1

United cites Cal. Ins. Code §§ 570, 4064, 10089.2, 10101, 10110.6, 10112.1, 10112.27, 10112.9, 10113.95, 10123.91, 10128.4, 10144.3, 10717, and 11588 as examples of statutes with express renewal language. App'x of Exs., Ex. 20 [Doc. # 148-7].

For example, in its Aug. 8, 2017 Order, the Court addressed United's attempt to utilize its briefing to rehash its statutory interpretation arguments instead of advancing new arguments relevant to its position. See Aug. 8, 2017 Order at 4-6. [Doc. # 107.] In the Aug. 8, 2017 Order, the Court construed United's Motion to Dismiss Bentley's Third Amended Complaint as a Motion for Reconsideration under Fed. R. Civ. Proc. Rule 60(b). Id. at 4. The Court noted "United's MTD focuses on this statutory-interpretation issue on which the Court already ruled. Indeed, United devotes roughly only three pages of its 25-page brief to the class-definition issue." Id. at 5 (internal citations omitted).

United also asserts "it is not the role of the judiciary to extrapolate a public policy from a statute that the plain meaning of its words simply does not support." United MSJ at 15-16. The Court did not rely on a public policy to interpret the Statutes. The Court merely observed that its "interpretation of the Statutes is further supported by the public policy underlying the Statutes to protect consumers from losing insurance coverage if the premium is accidentally missed." June 22, 2016 Order at 7 (emphasis added).

United offers an email blast from the Association of California Life & Health Insurance Companies to entity representatives in the insurance industry that states the Statutes will be implemented prospectively and does not apply to policies issued or delivered prior to January 1, 2013. See United App'x of Exs., Ex. 21.

UR2828580 (line 21).

See infra Part V.A.3, n. 14.

The Court recognizes that, at the Class Certification stage, the Court ruled that United needed to comply with all laws in effect at the time, including the Statutes (See May 1, 2018 Order at 10). At the summary judgment stage, however, the Court must determine whether there was a breach of contract. See Bentley MSJ at 7. For there to be a breach in contract due to violation of the notice requirement pursuant to the Statutes, the Statutes must apply to the Class Policies. The parties' extensive briefing regarding the renewal policy makes it clear to the Court that a renewal must occur before the Statutes can apply to the Class Policies. The mere concurrence of Class Policies in force when the Statutes became effective is insufficient for the Statutes to apply to the Class Policies. The Statutes must be incorporated into any given policy prior to determining whether the Statutes afford a private cause of action.

UR2627721 (line 16), UR2674494 (line 18), UR2671752 (line 19), UR2584816 (line 23), UR2681720 (line 24), and UR2654966 (line 26).

UA7820542 (line 13), UR2663468 (line 14), UR 2648669 (line 15), and UR2648784 (line 17).

Bentley originally asserted policies 7864066, 7759088, BU1067439, and BU1164839 were in the Class for this reason. Jt. Stip. Facts ¶¶ 20, 24. These policies were originally included in the November 2017 Class List, but were excluded from the May 2018 Class List because they fell out of the Class Definition per the Court's May 1, 2018 Order. United Mot. to Show Cause at 6. Since filing their summary judgment motions, the Parties have resolved their dispute regarding 7864066 and BU1067439 and agree these two policies are not in the Class. Resp. to United Opp'n at 1 [Doc. # 164]; Jt. Stip. Bentley Mot. to Show Cause at 1, n.1 [Doc. # 168]. Bentley still maintains 7759088 and BU1164839 are in the Class.

7864066, 7759088, and BU1164839.

United requests Bentley send curative letters to the four beneficiaries (7864066, 7759088, and BU1164839) who improperly received the Class notice, advising those beneficiaries that the August 8, 2018 notice they received was in error and should be disregarded. United Mot. Show Cause at 8-9. United also requests it be permitted to review the notice prior to it being sent and that it be provided with a copy of each notice Bentley sends. Id. at 9.

The Parties stipulated that if the Court resolves their dispute regarding these policies in this Order, it would resolve United's Mot. to Show Cause. See Jt. Stip. re Mot. to Show Cause. [Doc. # 168.]

The merits of the cross-motions for summary judgment pertain to Jennifer Bentley, the class representative. Whether any given policy qualifies to be on the Class List is a separate matter, which the Court has addressed above.

Bentley also asserts United breached the Bentley Policy because it did not provide Bentley the proper 30-day notice provided in § 10113.72 in accordance with the 60-day grace period in § 10113.71. Bentley MSJ at 18-19.

Bentley's argument that United waived its right to claim set-offs because United failed to assert set-offs as an affirmative defense is not persuasive. See Bentley Reply at 13. United's Answer asserts set-off as its Seventeenth Affirmative Defense. [Doc. # 108.] Bentley cites several cases to support her argument, but none of the cases cited relates to life insurance policy death benefits and the Court is not convinced the cited cases are analogous. Id. Furthermore, calculating the face value of each policy according to the computation set forth in the policy is consistent with Cal. Ins. Code § 10111.

The Court assumes United's assertion that the policy interest rates are either one or three percent because it determined that none of the policyholders selected the Payout Option that has an interest rate based on a Single Premium Immediate Annuity policy, which may be different than one or three percent. See Jt. Stip., Ex. 3 at 9.

United requests that it proceed through its normal claims process to confirm the policyholder has died and from what cause. United Opp'n at 22, n.19. Determining cause of death is relevant to the death benefits calculations for the graded benefit whole life policies. Id.

Seesupra Part V.A.6, n. 16.